UNITED STATES of America, Appellee,

v.

Odie Lee JORDAN, Appellant.

No. 89–1732.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1989.

Decided Jan. 4, 1990.

R. Thomas Day, St. Louis, Mo., for appellant.

James K. Steitz, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Odie Lee Jordan appeals his conviction for being a felon in possession of a firearm described in 18 U.S.C. § 922(g) (Supp. V 1987), arguing numerous errors in the trial court and raising a *Batson* claim. As well, he argues that the trial court incorrectly enhanced his prison term under 18 U.S.C. § 924(e)(1) (Supp. V 1987). Unpersuaded

by Jordan's arguments and bound by precedent, we affirm his conviction and sentence.

## I. BACKGROUND

Jordan was the passenger in the front seat of a two-door Ford LTD driven by his girlfriend on the night of his arrest in August 1987. The car was pulled over after running a red light. As one of the uniformed police officers approached the car he saw Jordan place a silver object (which the officer took to be a gun) into the middle of the front seat. Indeed, a .38 revolver was found in the driver's purse, and Jordan was arrested and charged as a felon in possession of a firearm. Some $3,900 in cash was also found on him that night.

At trial, Jordan's defense was that the gun belonged to his girlfriend. He requested a "mere presence" instruction to this effect which the district court refused. The government introduced eight of Jordan's prior felony convictions to prove his status as a felon in possession. Jordan was convicted and sentenced to fifteen years without probation or parole under the enhancement provision cited above.

## II. DISCUSSION

■ We begin with Jordan's *Batson* claim. From his original panel of 35 venirepersons, the district court removed four for cause without objection. Of the remaining 31, seven were blacks, as is Jordan. The government had six peremptory strikes and Jordan had ten. Of those, the government used three against blacks and three against whites.[1] Jordan struck one black (and presumably nine whites) peremptorily. That brought the panel down to fifteen with three blacks remaining. Apparently the first twelve were taken as acceptable jurors (including the three remaining black panel members) with a remainder of three. The government and Jordan were then each allowed to strike one of the remaining three panel members to leave one alternate juror. Hence, of the six peremptory strikes available to it, the government exercised three against blacks and three against whites.[2]

Jordan's *Batson* claim is that because the government peremptorily struck 3 of 7 black venirepersons as compared to 3 of 21 white venirepersons, blacks were struck at a rate three times as frequently as whites. Jordan claims that establishes a prima facie case. The district court disagreed, saying that the numbers alone were insufficient to make out a prima facie case, unless Jordan could point to other circumstances or evidence. Jordan's attorney expressly declined to make any other record and stood by his "rate" argument. Thus, that is all the record we have to pass on the district court's finding that no prima facie case was made.

As a first matter we note that by what standard we review a finding of no prima facie case under *Batson* remains undetermined in this circuit. *United States v. Fuller*, 887 F.2d 144, 146 (8th Cir.), *petition for cert. filed*, No. 89–6215 (U.S. Dec. 4, 1989). This case does not give us an opportunity to name such a standard. Nevertheless, we believe that under any standard, the district court's finding was correct.

*Batson* gave the district courts the discretion to determine when a prima facie case is made from facts and circumstances which are the defendant's burden to show,

1. The record does not indicate the racial classification of the jurors who were not black. Jordan refers to 24 whites of the 31 panel members remaining after the district court removed four persons for cause, and we will assume they were whites for purposes of our opinion.

2. Jordan argued first at trial that the government had six total peremptories, half of which were used against blacks, but in his brief, Jordan suggests seven total peremptories. We will consider the first six and not the "extra" peremptory used to leave an alternate after the twelve jurors were already selected. This view actually makes Jordan's argument more compelling as it shows blacks to be struck at a rate three times more frequently than whites—3 of 7 blacks as compared to 3 of 21 whites. Jordan includes the three whites from whom the alternate was chosen in his calculation, arriving at a rate of blacks struck at two and one-half times for each white struck—3 of 7 blacks as compared to 3 of 24 whites.

for example, remarks of the prosecutor made during voir dire and comparisons to similarly situated whites not peremptorily struck. *See Batson v. Kentucky*, 476 U.S. 79, 96–97, 106 S.Ct. 1712, 1722–23, 90 L.Ed.2d 69 (1986). Such facts and circumstances are what we look for in the record to determine if a correct finding was made about a prima facie case.

Numbers alone have been consistently rejected by this court as making out a prima facie *Batson* claim. *See Fuller*, 887 F.2d at 146 and cases cited therein. While the rate argument made by Jordan is more unique than the percentage arguments frequently made, we believe it is little more than clever mathematics and not a sound footing on which to expand constitutional law. True as it is that the numbers of Jordan's case reveal that the government struck blacks three times as frequently as it struck whites, they also reveal that an *equal* number of blacks and whites were struck by the government. The numbers show as well, after the district court's cause removals, that 43% (3 of 7) of available blacks served on the jury, while only 38% (9 of 24) of available whites served.[3] Obviously the numbers alone can seldom establish a prima facie case of race discrimination.

Jordan chose to argue no other facts or circumstances before the district court and instead asks us to declare as a matter of law that when blacks are struck at a certain rate more frequently than whites a prima facie case is made out under *Batson*. If we were to do that, a prima facie case would always be made out where blacks are struck three times as frequently as whites. Thus (assuming a panel of 28 and 6 peremptories for the government), if the government strikes 2 of 4 blacks and 4 of 24 whites, a prima facie case would be made because blacks have been struck

three times as frequently as whites—despite the cases from this court that have failed to find a prima facie case were 50% of the black venirepersons were struck. *See United States v. Ingram*, 839 F.2d 1327, 1330 (8th Cir.1988); *United States v. Montgomery*, 819 F.2d 847, 850–51 (8th Cir.1987). At the other extreme, suppose the government strikes 2 of 14 blacks and 4 of 14 whites (here blacks are struck only half as frequently as whites), is no prima facie case made out even if the government used its strikes for racial reasons? Clearly not.

This is not to say that numbers are never helpful to demonstrate to the district court that the government may be striking blacks for racial reasons. Numbers, however, are often too manipulable to make out a case by themselves. The constitutional principle of *Batson* would not be well served by numerical rigidity. Comparison to the treatment of similarly situated, but unstruck panel members will better make out a prima facie case, if one exists, for the district court. Then *Batson* will be served, because the district court will evaluate the prima facie case regardless of the numbers involved on the basis of circumstances (other than numbers alone) that demonstrate race discrimination. We believe it is best to leave the district courts unfettered by an artificial mathematical formula[4] so that they can determine on a case-by-case basis the existence of a prima facie claim, and thus eliminate race discrimination in the selection of juries—regardless of what the numbers can be made to show.

Jordan failed to articulate anything other than his rate argument before the district court. For the reasons given, we think that, under any standard, the district court did not err by finding that no prima facie case was made.

---

**3.** The fact that blacks do serve on a jury will not alone belie a *Batson* claim, but their service can be taken into account to determine whether or not the government is striking blacks for racial reasons. And, "*Batson* does not require that the government adhere to a specific mathematical formula in the exercise of its peremptory challenges." *United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir.1987).

**4.** Similarly we have held that the government is not bound by mathematical formulas in the use of its peremptories. *Montgomery*, 819 F.2d at 851. To bind the district court by such formulas in its review of the government's use of peremptories would have the same effect as binding the government to begin with.

We turn next to Jordan's claim that the district court erred by refusing his mere presence instructions. Jordan's defense was that the gun was not his and that his mere presence as a passenger in the car did not sufficiently show his possession of the gun to sustain a conviction under § 922(g). Jordan requested the following instructions to explain his defense to the jury:

Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant committed the crime.

Unless you believe that the government's evidence has proven beyond a reasonable doubt that [Jordan's girlfriend] was not in possession of the firearm in question at the time of the arrest on August 18, 1987, then you shall acquit the Defendant.

Supplemental Designation of Record at 33 and addendum.

Jordan claims that without these instructions he was denied an appropriate theory of defense under the holding from *United States v. Manning*, 618 F.2d 45 (8th Cir. 1980) (per curiam).

In *Manning* we held that the defendant had been denied his theory of defense by failure of the district court to include an instruction similar to the first one Jordan requested. In that case three individuals were in a car, two in the front seat and one in the back, and there was conflicting testimony as to whether the defendant was in the front or back and as to who dropped the shotgun in question out of the front passenger window. The case was reversed because we believed the instruction given on possession was insufficient to preclude conviction for mere presence of the defendant.

■ The principle of law from *Manning* is that a defendant is entitled to an instruction outlining his theory of defense if he makes a timely request for an instruction which correctly states the law and is supported by the evidence. *Manning*, 618 F.2d at 47–48. The proviso, however, is

that the defendant is "not entitled to a particularly worded instruction where the instructions given by the trial judge adequately and correctly cover the substance of the requested instruction." *Id.* at 48 (citations omitted).

■ The possession instruction given to Jordan's jury reads:

The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

You may find that the element of possession as that term is used in these instructions is present if you find beyond reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

Instruction No. 24, Supplemental Designation of Record at 34.

Neither the testimony nor facts of this case present as close a question as in *Manning*, despite Jordan's claim that the gun was his girlfriend's. Unlike in *Manning*, there was no doubt that Jordan was in the front seat, there was no possibility of confusing Jordan with other persons in the car, and there was evidence that Jordan placed the gun in the middle of the front seat. The very slim defense that Jordan was only present in the car and never in possession of the gun was as well presented to the jury by the instructions given as by Jordan's requested instructions.[5] Thus

5. We do not have to pass on whether Jordan's requested instructions were correct statements

we believe that the instructions as a whole, particularly No. 24, adequately and correctly covered the substance of Jordan's requested instructions and that it was not error to refuse his requests.

■ Jordan's remaining points of error from his trial are not substantial. We have reviewed the record and are not persuaded by them. First is his claim that the government's introduction of evidence of eight of his prior felonies was prejudicial because he offered to stipulate to a prior felony conviction. The government does not have to stipulate to proof of prior convictions. *United States v. Savage*, 863 F.2d 595, 599 (8th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989). The government had to prove beyond a reasonable doubt that Jordan had prior felony convictions, and the introduction of 8 of 23 of those to do so was not error. Second is Jordan's claim that the district court erred in allowing the government to introduce photos that he alleged did not fairly represent the vehicle he was in on the night of his arrest. While it is true that the government's photos depicted a four-door rather than two-door car, they were thoroughly founded before admission as fairly representing the lighting and visibility conditions on the night of the arrest. Jordan was allowed to introduce his own photos of a two-door car, despite the fact that the lighting conditions were substantially different from those on the night of

his arrest. We defer to the district court's broad discretion, particularly here where Jordan was allowed to introduce his own photos before the jury. Third Jordan argues that the government impermissibly introduced evidence of his possession of $3,900 on the night of his arrest. Jordan argues that this was the introduction of a prior bad act, not allowed under the Federal Rules. We disagree. Evidence of the money was evidence of motive for possession of a weapon, which the government had to prove. There was no abuse of discretion in the district court's admission of that evidence.

■ Finally Jordan argues error in enhancement of his sentence under § 924(e) [6] for the reason that his prior burglary convictions from Arkansas and Missouri are not of the type of violent felonies that Congress intended to be used for enhancement because the crimes of which he was convicted are not burglaries as defined by Congress nor do they require conduct which puts anyone at serious risk of physical injury.[7] Jordan recognizes that this circuit has decided this issue against him in *United States v. Portwood*, 857 F.2d 1221, 1223–24 (8th Cir.1988) (holding second degree burglary in Missouri comes within the meaning of burglary in § 924(e)(2)(B)), *cert. denied,* — U.S. ——, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989), but urges our reconsideration in light of recent cases from the Ninth and Fourth Circuits.[8]

of the law. However, we note that because Jordan could have jointly possessed the gun with his girlfriend the instruction requested with respect to her possession of the gun, if given, would probably not have been a correct statement of the law.

**6.** (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

18 U.S.C. § 924(e)(1) (Supp. V 1987).

**7.** (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (Supp. V 1987).

**8.** *United States v. Chatman*, 869 F.2d 525, O'Scannlain, dissenting, (9th Cir.1989) (California auto burglary law not within § 924(e)); *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988) (Maryland storehouse breaking law not within § 924(e)).

Our court has already followed *Port-wood* in *United States v. Taylor,* 864 F.2d 625 (8th Cir.), *cert. granted,* —— U.S. ——, 110 S.Ct. 231, 107 L.Ed.2d 183 (1989). We recognize the astute dissent in *Taylor* by Judge Bright, *id.* at 627–30, but we are bound by the previous panel decisions in *Taylor* and *Portwood.* *Portwood* distinguished *Headspeth* as a case not involving burglary *per se.* *Portwood,* 857 F.2d at 1224 n. 2. Jordan's convictions are for burglary, which the statute specifically names at § 924(e)(2)(B)(ii). Despite the argument from the legislative history to the contrary, we follow *Portwood*[9] and conclude that Jordan's state convictions were correctly used to enhance his sentence.

## III. CONCLUSION

Finding no error in the proceedings or judgment of the district court, Jordan's conviction and sentence are affirmed.

---

9. In our view the Missouri second degree burglary statute encompasses the common law definition of burglary and comes within the purview of § 924(e) as intended by Congress, regardless of what other states' definitions might be.