# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2891
_____

United States of America,                  *

                  *

          Appellee,        *

                  *   Appeal from the United States

   v.                   *   District Court for the

                  *   Western District of Missouri.

Michael E. McCarthy,        *

                  *

          Appellant.       *

_____

Submitted:  January 9, 2001

Filed:  March 30, 2001

_____

Before LOKEN, HEANEY, and BYE, Circuit Judges.

_____

HEANEY, Circuit Judge.

Michael McCarthy challenges the sufficiency of the evidence used to convict him of bank robbery and firearm charges.  We affirm the judgment of the district court.[1]

---

[1]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

# I.

On February 23, 1998, Steven Bogguess and a man wearing a red jacket entered the Mercantile Bank on 200 Northeast Vivion Road, Kansas City, Missouri, and robbed it. Both men wore stocking masks, and surveillance photographs showed the man in the red jacket holding a firearm in his left hand. As Bogguess and the man in the red jacket made their way from the bank to their getaway car, an off-duty police officer who had just finished his banking shot and killed Bogguess. The man in the red jacket and the driver of the getaway car escaped, leaving Bogguess's body in the parking lot. Testimony of witnesses who saw the robbery unfold provided a general description of the man in the red jacket, but did not establish his identity.

Shortly after the robbers fled the scene, the authorities found their getaway car abandoned in a near-by parking lot. From the front passenger's side of the car, the authorities recovered, inter alia, a stocking cap which they sent to the crime laboratory for deoxyribonucleic acid (DNA) analysis.

An anonymous tip eventually led the authorities to indict McCarthy on one count of bank robbery, in violation of 18 U.S.C. § 2113(a), (d); and one count of using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). During McCarthy's three-day jury trial, a DNA expert and several jailhouse informants provided testimony connecting McCarthy to the bank robbery. The jury convicted McCarthy on both counts, and the district court sentenced McCarthy to life imprisonment on the section 2113 violation, and a consecutive five-year sentence on the section 924 violation. McCarthy now appeals, challenging the sufficiency of the evidence presented at his trial.

## II.

When considering a challenge to the sufficiency of the evidence used to convict a defendant, we review the evidence in the light most favorable to the verdict, and give the verdict the benefit of all reasonable inferences which might be drawn from the evidence. See United States v. Wilson, 103 F.3d 1402, 1406 (8th Cir. 1997). This is a stringent standard, see id., and we will uphold the verdict if there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt, see United States v. Beasley, 102 F.3d 1440, 1451 (8th Cir. 1996), cert. denied, 520 U.S. 1246 (1997).

During McCarthy's trial, Frank Booth, the crime laboratory's senior criminalist in trace and DNA evidence, testified that he inspected the stocking cap recovered from the getaway car and found an abundance of dandruff, hairs on both the inside and outside of the cap, and a high degree of amylase acid--an enzyme found in saliva. Booth compared the genetic profile he derived from the dandruff against the genetic profile he derived from McCarthy's blood sample and found that they matched.[2] In fact, Booth concluded only fifty-one people out of ten billion could have matched the profile.

Booth also compared the hairs he collected from the stocking cap to a hair sample from McCarthy. Of the thirteen hairs Booth found on the outside of the cap, five hairs were suitable for testing, and only one of the hairs matched McCarthy; Booth testified the other hairs were "inconclusive," i.e, they were either too short, frayed, opaque, had features common to the general population, or Booth could not orient the

---

[2]Booth analyzed this evidence using the restriction fragment length polymorphism (RFLP) procedure. Although McCarthy does not challenge the DNA profiling techniques Booth used to reach his conclusions, we note this court has taken judicial notice of the reliability of the RFLP procedure. See Beasley, 102 F.3d at 1445.

hair in relation to its root. Booth collected fifteen hairs from the outside of the stocking cap and matched four of them to McCarthy. The remaining eleven hairs were inconclusive.

Booth testified he did not test the saliva he found on the stocking cap because the abundance of dandruff would have obstructed his analysis of the saliva. He conceded on cross examination, however, that if one individual contributed the saliva while another individual contributed the dandruff, the genetic profile for the saliva would be different from the genetic profile of the dandruff even if it was contaminated with the dandruff of the other individual. Booth also admitted he did not know how long the dandruff had been in the stocking cap.

Additionally, six jailhouse informants testified against McCarthy. One informant testified he had been incarcerated with McCarthy and Bogguess in a drug-rehabilitation center in December 1997, and he had overheard McCarthy make incriminating statements about his plans to rob a bank. The other five informants had been incarcerated with McCarthy at one point or another and testified McCarthy had either asked them to participate in the robbery, confessed to them his involvement in the robbery, or asked them to lie about his involvement in other robberies. Of these five informants, each of them testified against McCarthy in exchange for a potential sentence reduction.

In his defense, McCarthy told the jury he was helping his sister clean her house when the robbery occurred. He believed the stocking cap recovered from the getaway car looked similar to one he wore during smoke breaks at the drug-rehabilitation center. McCarthy explained that the drug-rehabilitation center had a coat rack by the door residents used to go outside to smoke. Residents would take a hat--any hat--from the coat rack, wear it during their smoke break, and return the hat to the coat rack when they came back inside. McCarthy admitted he wore the stocking cap at some point in time, but contended he wore many other hats while at the drug-rehabilitation center and

-4-

did not take the stocking cap with him when he left. McCarthy contended he never confessed his involvement in the bank robbery to any of the jailhouse informants who testified against him and suggested they fabricated their testimony in order to get lenient treatment from the government.

McCarthy now argues on appeal that the DNA evidence connecting him to the stocking cap proves only that he wore the stocking cap prior to its recovery by the authorities, not that he robbed the bank, and that if the authorities wanted to prove the true identity of the robber who wore the stocking cap, they should have analyzed the saliva. Furthermore, McCarthy argues the jailhouse informants who testified against him gave inconsistent testimony, testified to facts easily obtainable from press accounts of the robbery, and fabricated their testimony.

In essence, McCarthy's argument is that the jury should have believed him and his witnesses over Booth and the jailhouse informants. The problem with this line of argument, however, is that this court cannot review the credibility of trial witnesses on appeal. See United States v. Hall, 171 F.3d 1133, 1149 (8th Cir. 1999) (it is not province of appellate court to revisit jury's assessment of witness credibility), cert. denied, 529 U.S. 1027 (2000). The jury heard Booth testify that the large amount of dandruff in the stocking cap prevented him from testing the saliva, and that the other hairs he found on the stocking cap were not suitable for testing. The jury also heard the testimony of the jailhouse informants, knew they were testifying pursuant to agreements with the government, and saw them subjected to cross examination. Once Booth and the jailhouse informants testified, it was up to the jury to determine whether they should believe or disbelieve the veracity of their testimony. See United States v. Slaughter, 128 F.3d 623, 628 (8th Cir. 1997) (whether witness has agreement with government or will receive sentence reduction in exchange for his testimony is relevant to assessing witness's credibility, but jury is always ultimate arbiter of witness's credibility, and appellate court will not disturb jury's finding in this regard); United States v. Starcevic, 956 F.2d 181, 184 (8th Cir. 1992) (rejecting defendant's challenge

to credibility of government witnesses because although witnesses had vested interest in testifying against defendant, jury knew this and was able to consider such circumstances).

Taking Booth's and the jailhouse informants' testimony together with the other evidence presented at McCarthy's trial, we conclude the evidence, when viewed in the light most favorable to the government, would permit a reasonable jury to conclude beyond a reasonable doubt that McCarthy was the man in the red jacket and therefore guilty of the bank robbery and firearms charges.  See 18 U.S.C. § 2113(a), (d); 18 U.S.C. § 924(c); Beasley, 102 F.3d at 1451-52 (surveillance photographs and witness testimony indicating defendants pointed their firearms at tellers during bank robbery established that defendants "used" their firearms within meaning of  § 924(c)); Harris v. United States, 938 F.2d 882, 883 n.2 (elements of § 2113(a) and (d) violations).

## III.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.