# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1525

_____

United States of America,⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀Appellee,⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*⠀⠀Appeals from the United States
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*⠀⠀District Court for the District
Isidro Serrano-Lopez,⠀⠀⠀⠀⠀⠀⠀*⠀⠀of Nebraska.
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀Appellant.⠀⠀⠀⠀⠀⠀⠀*

_____

No. 03-1526

_____

United States of America,⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀Appellee,⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
Eleodoro Lopez-Urias, also known as⠀*
Lole,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀Appellant.⠀⠀⠀⠀⠀⠀⠀*

_____

No. 03-1540
_____

United States of America,        *
                               *

         Appellee,        *
                               *

    v.                 *
                               *

Elvia Rios,             *
                               *

        Appellant.     *
_____

Submitted: October 20, 2003

Filed:  May 3, 2004
_____

Before RILEY, BEAM, and SMITH, Circuit Judges.
_____

BEAM, Circuit Judge.

Defendants were jointly tried and convicted by a jury of possessing more than five kilograms of a mixture or substance containing a detectable amount of cocaine with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). Each defendant appeals, asserting the district court[1] erred in denying their motions for acquittal and new trial based on insufficient evidence, in refusing to give a "mere presence" instruction to the jury, and in improperly calculating the drug quantity

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

involved in the offense.  Defendant Rios also appeals the district court's[2] denial of her motion to suppress the drugs seized.  We affirm.

## I.    BACKGROUND

Elvia Rios, Isidro Serrano-Lopez, and Eleodoro Lopez-Urias were traveling from California to Omaha, Nebraska, on Interstate 80 in a Nissan Maxima.  Trooper Kenneth Ayers of the Nebraska State Patrol stopped the car for speeding near Kearney, Nebraska.  Rios was driving.  Serrano-Lopez was in the front-passenger seat.  Lopez-Urias was in the backseat.

Trooper Ayers asked Rios to sit in his patrol car so he could ask her some questions and proceed with the citation process.  Rios stated that she was coming from Compton, California, and traveling to Omaha, Nebraska, to visit a cousin, Maria.  She identified the front-seat passenger as Serrano-Lopez, and she stated that they had stopped in Arizona during the trip to get fuel.

Trooper Ayers then approached the car and asked Serrano-Lopez some questions.  Serrano-Lopez did not speak English, so Trooper Ayers used the limited Spanish he knew.  Serrano-Lopez said he was coming from Los Angeles, California, and traveling to Omaha, Nebraska, to visit a family member, Pablo.  He said they had not stopped in Arizona along the way.

Trooper Ayers then returned to his patrol car and resumed questioning Rios. Among other things, Rios said she had left California the day before and she was

---

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable Kathleen A. Jaudzemis, United States Magistrate Judge for the District of Nebraska.

-3-

going to stay in Omaha for about a week. She also said she knew Serrano-Lopez but didn't know the backseat passenger.

Trooper Ayers issued a warning to Rios for speeding. He then asked her for consent to search the vehicle. She consented and the occupants were ordered out of the car. At the officer's insistence, they stood about twenty-five feet in front of the car during the search. In the meantime, Trooper Dan Covert of the Nebraska State Patrol arrived to help search the car. When the trunk was searched, Trooper Ayers could smell what he recognized as the distinct odor of methamphetamine. When the passenger compartment was searched, the officers noticed fresh tool marks on the screws securing the dashboard and glove box.

The officers continued their search but found no controlled substances. Unpersuaded that drugs were not in the vehicle, Trooper Ayers retrieved a cordless drill equipped with a screwdriver bit and removed the screws that secured the molding above the car's left rear rocker panel—the body panel just below the left rear passenger door. After removing the screws, Trooper Ayers could see cellophane packages hidden in the rocker panel. Believing these packages contained controlled substances, the officers arrested the occupants. Trooper Ayers drew his sidearm, ordered the individuals to the ground, and handcuffed them. According to Trooper Ayers, the defendants did not appear surprised by the arrest, and no one asked why they were being arrested. The car was impounded.

Once impounded, the interior of the car was dismantled, and packages were retrieved from the rocker panel, behind the dashboard, and behind the kickplate just to the left of the brake pedal of the car. The packages were not visible from anywhere in the car until the car was dismantled. Eighteen packages were retrieved and a field test of one of the packages revealed the presence of cocaine. The officers weighed the packages on a certified scale. The combined weight of all packages was 5.94 kilograms. Four packages were also individually weighed. Theses packages weighed

.59 kilograms, .54 kilograms, .59 kilograms, and .50 kilograms. Core samples were then taken from those four packages and sent to the Nebraska State Patrol's crime lab for testing. Testing revealed that the core samples contained a detectable amount of cocaine. The remaining packages were never individually weighed or sampled.

Lieutenant Dennis Leonard of the Nebraska State Patrol interviewed Rios after her arrest. According to Lieutenant Leonard, Rios said that, although she had told Trooper Ayers the car belonged to her cousin, she now thought it belonged to someone else. She said a man by the name of Pica had paid her four-hundred dollars to drive the occupants to Omaha and that, two weeks ago, she had done the same thing in another car with different occupants. She said she was driving the backseat passenger because he had no driver's license. She admitted she had no cousin named Maria, but said Pica's sister was named Maria and that was where she was going.

Lieutenant Leonard also interviewed Lopez-Urias after his arrest. He did not speak English, so Lieutenant Leonard enlisted an interpreter—Agent Randall Holm of the United States Border Patrol. Agent Holm testified at trial to what Lopez-Urias said. Lopez-Urias said he knew Serrano-Lopez because the two had grown up together. He said he was going to Omaha to visit a man named El Pollo, but could provide no address for him. He said at first that he did not know a man named Pica, and later said he knew of a man named Pica, but did not know him personally.

Defendants were all indicted for possessing with the intent to distribute more than five kilograms of a mixture or substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). Defendants moved to suppress the evidence found in the search of the automobile, claiming the consent was involuntary and the search was otherwise unsupported by probable cause. The district court denied the motion.

At trial, Lieutenant Leonard testified that, based on his law enforcement experience, an amount of cocaine equal to the amount of the substance seized from the car is not indicative of personal use, but rather is associated with distribution. And he testified that the street value of such an amount of cocaine would be approximately $130,000. Celeste Laird of the Nebraska State Patrol Criminalistics Laboratory also testified to the results of the testing done on the core samples Trooper Ayers submitted. Ms. Laird testified that all four core samples tested positive for cocaine. She could not testify, though, to the weight of any of the packages because only the core samples were submitted, and she could not testify as to the contents of the fourteen unsampled packages. She did testify that, in the past, she had encountered packages resembling the fourteen unsampled packages, and that in each instance, she found they contained controlled substances.

Defendants moved for acquittals after the government rested. The motions were denied. Defendants offered no further evidence and again moved for acquittals. Those motions were also denied.

Jury instructions were then addressed. Defendants requested that the court include a jury instruction setting forth the theory of defense—"mere presence." The district court refused, sustaining the government's objection that the existing instructions adequately conveyed the substance of the defendants' defense.[3]

---

[3]Serrano-Lopez also requested an instruction modeled on Eighth Circuit Model Instruction 2.15: Statement of One Defendant in Multi-Defendant Trial. Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit (West 2003). The district court refused to include this instruction in its final charge, and Serrano-Lopez assigns its omission as error only in combination with his argument regarding the refusal of the mere-presence instruction. He offers no argument in his opening brief as to why the failure to instruct the jury on the use of codefendant statements was erroneous and cites no case law in support of his position. So we regard the issue as abandoned. Fed. R. App. P. 28(a)(9)(A); United States v. Eldeeb, 20 F.3d 841, 843 (8th Cir. 1994).

The case was submitted to the jury. Defendants Rios, Lopez-Urias, and Serrano-Lopez were found guilty of the crime charged. After the verdict was entered, all defendants renewed their motions for acquittal and, alternatively, moved for new trials. Those motions were denied. Serrano-Lopez was sentenced to 121 months of imprisonment, followed by five years of supervised release. Rios was sentenced to 120 months of imprisonment, followed by five years of supervised release. And Lopez-Urias was sentenced to 135 months of imprisonment, followed by five years of supervised release.

Rios, Lopez-Urias, and Serrano-Lopez appeal.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

We review the denial of a motion for judgment of acquittal de novo. We evaluate the evidence in the light most favorable to the government and draw all reasonable inferences in its favor. "We reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Frank, 354 F.3d 910, 916 (8th Cir. 2004) (quotation omitted). This standard is quite strict; "we will not lightly overturn the jury's verdict." United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002). "'If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction.'" Ortega v. United States, 270 F.3d 540, 544 (8th Cir. 2001) (quoting United States v. Baker, 98 F.3d 330, 338 (8th Cir. 1996) (further quotation omitted)). "[T]he government's 'evidence need not exclude every reasonable hypothesis of innocence.'" United States v. Butler, 238 F.3d 1001, 1004 (8th Cir. 2001) (quoting United States v. Jolivet, 224 F.3d 902, 907 (8th Cir. 2000) (further quotation omitted)).

Evidentiary sufficiency challenges taking the form of new-trial motions are evaluated differently. "The [district] court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. We will not reverse the district court's decision absent a clear and manifest abuse of discretion." United States v. Rodriguez, 812 F.2d 414, 417 (8th Cir. 1987).

For the jury to find the defendants guilty, the government had to prove beyond a reasonable doubt that each defendant (1) possessed cocaine, (2) knew that what he possessed was a controlled substance, and (3) intended to distribute the substance he possessed. 21 U.S.C. § 841(a)(1).[4] Possession can be actual or constructive. United States v. Ojeda, 23 F.3d 1473, 1475 (8th Cir. 1994). Actual possession is the knowing, direct, and physical control over a thing. "[C]onstructive possession requires knowledge of an object,[5] the ability to control it, and the intent to do so." United States v. Lee, 356 F.3d 831, 837 (8th Cir. 2003).

A large quantity of drugs, standing alone, is sufficient evidence of the third element of the offense—intent to distribute. Ojeda, 23 F.3d at 1476. Also, the evidence used to show an intent to distribute can, in a constructive possession case, also serve to establish that the individual intended to exercise control over an item.

---

[4]We note that drug quantity "must often be treated as an element of the offense." United States v. Sheppard, 219 F.3d 766, 767 (8th Cir. 2000); accord United States v. Lee, Nos. 03-1324, 03-1376, 2003 WL 23094970 (8th Cir. Dec. 31, 2003) (describing quantity as the fourth element of the offense and citing Sheppard). This, however, is not such a case. See post II.C.

[5]The knowledge contemplated by the statute is two-fold in a constructive possession case. The defendant must have knowledge of both the object's presence and its illegal character. Ability to control without knowledge of the object's presence is not constructive possession. Nor is constructive possession illegal without knowledge that the possessed object is a controlled substance.

Lee, 2003 WL 23094970. This case is one of constructive possession, for, as the government concedes, there is no evidence of actual possession. In this case then, the large quantity of drugs involved serves as sufficient evidence of both the intent to distribute and the intent to exercise control. Likewise, the defendants do not claim that even if they had known contraband was concealed in the car, they did not know it was a controlled substance. Thus, we are left to evaluate whether sufficient evidence exists as to the remaining requirements of constructive possession—knowledge of the object's presence and the ability to control the object.

We conclude the evidence was sufficient. First, we find sufficient evidence of control in the fact Rios, Serrano-Lopez, and Lopez-Urias were in the vehicle and the vehicle had traveled nonstop from California. Rios was driving the vehicle at the time of the stop; thus, her ability to control the vehicle (and thus the drugs) is undisputable. Ortega, 270 F.3d at 546. Although a person's mere presence in a vehicle containing contraband is not enough to find him guilty of the offense, presence and other evidence can give rise to an inference of control. Here, the defendants had all been in the vehicle since it left California. And they traveled nonstop from California until they were stopped near Kearney, Nebraska. This is sufficient evidence from which a reasonable jury could infer Serrano-Lopez and Lopez-Urias had the ability to control the vehicle. It seems likely that someone other than Rios drove. And given the joint nature of the trip, the occupants likely directed the car's movements, either solely or jointly.

The fighting issue, as it is in most constructive possession cases, is whether the defendants knew the drugs were in the car. The large quantity of drugs involved is evidence of the defendants' knowledge. Even if the drugs were not owned by the defendants, it is unlikely that the owner would place approximately $130,000 worth of cocaine in the hands of people who do not even know it is there. Cf. Maryland v. Pringle, 124 S. Ct. 795, 801 (2003) ("The quantity of drugs . . . in the car indicated

the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.").[6]

Trooper Ayers also testified that the screws securing the dash and glove box had fresh tool marks on them, indicating the dash had been removed recently. Signs of tampering support an inference that the occupant of the car knew the drugs were hidden therein. Ortega, 270 F.3d at 546.

Additional evidence of the defendants' knowledge came from their own statements and their demeanor following the arrest. First, each appellant had a different reason for traveling to Omaha. Rios said she was going to visit Maria (who at first she claimed was Rios's cousin, and who she later claimed was Pica's sister), Serrano-Lopez said he was going to visit Pablo, and Lopez-Urias said he was going to visit El Pollo, but could provide no address for him. Though these destinations are not necessarily contradictory—each defendant could have been traveling to a different destination in Omaha—the jury could just as easily conclude that the defendants were each making a not-too-believable effort to explain their travels. Second, Trooper Ayers testified that the defendants did not appear surprised by the discovery of the drugs or the arrest and they did not question why they were being arrested. See id. at 545-46 (lack of surprise concerning concealed drugs indicates knowledge).

The defendants' inconsistent accounts of the trip also support a finding of knowledge. For example, Serrano-Lopez made a statement which conflicted with information provided by Rios. Serrano-Lopez denied traveling through Arizona,

_____

[6]The government also points to the fact the trunk smelled of methamphetamine. We find this factor is largely unpersuasive given the fact Trooper Ayers was only able to identify the smell (inaccurately) through his years of experience and training. With no evidence that any of the defendants had ever smelled methamphetamine before, this evidence carries little weight with regard to defendants' knowledge.

while Rios claimed the group had traveled through Arizona.[7]  Rios further contradicted herself concerning the identity of the person she was going to Omaha to see.  And only reluctantly, after her arrest, did she admit being paid to drive the car by Pica.  Lopez-Urias admitted he knew of Pica only after he had first denied such knowledge.  Evaluating these inaccuracies in the light most favorable to the government and drawing all reasonable inferences in the government's favor, we conclude a reasonable jury could conclude the defendants were concocting stories inconsistent with those of their compeers.  And the jury could reasonably infer that each did so because they knew drugs were in the car and wanted to avoid detection by giving the officer a believable story.

We are cognizant of the inferential nature of the proof of knowledge.  But a defendant's knowledge generally is difficult to prove in any other way.  We guard against the use of unreasonable inferences through our standard of review, but we do not require that the inferences themselves be shown by the evidentiary standard applicable to the determination of guilt.  To do so would take from the jury the arduous task that it is assigned.  We let the jury decide guilt and on appellate review we indulge all inferences that could reasonably have been made.  Indulging these inferences and considering all of the evidence in its totality, we are unable to conclude that no reasonable jury could have found the defendants guilty beyond a reasonable doubt, and we cannot conclude the district court clearly and manifestly abused its discretion in denying defendants' new-trial motions.  See Ojeda, 23 F.3d at 1476 & n.3 (defendant's purported explanation that he was traveling to visit a relative for whom he could provide no address, "extended car trip and a large quantity

---

[7]To the extent Serrano-Lopez attempts to explain away any reasonable inferences that could be drawn from this and other conduct by pointing to the language barrier between him and Trooper Ayers, that evidence was presented to the jury and its assessment of the testifying officer's credibility is not a ground for appellate review.  United States v. McCarthy, 244 F.3d 998, 1001 (8th Cir. 2001).

-11-

of drugs with a high street value" were factors indicative of knowledge and sufficiently supported the jury's verdict).

## B.    Mere-Presence Instruction

A criminal defendant is entitled to a theory-of-defense instruction that is timely requested, correctly states the law, and is supported by the evidence. United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002).

> The district court has considerable discretion in framing the instructions and it is sufficient if the instruction actually given by the trial court adequately and correctly covers the substance of the requested instruction. We determine the adequacy of instructions by looking at the instructions as a whole and in the context of the trial.

Id. at 423-24 (quotation marks and citations omitted).

Each defendant timely requested a mere-presence instruction that correctly stated the law. See United States v. Dunlap, 28 F.3d 823, 826 (8th Cir. 1994). The theory of defense was, in essence, that the government had failed to carry its burden on two elements of constructive possession—knowledge and control. Thus, the giving of the mere-presence instruction in this case would have duplicated the instructions outlining the elements of the offense, the definition of possession, and the burden of proof. United States v. Jordan, 893 F.2d 182, 185-86 (8th Cir.), vacated on other grounds, 496 U.S. 902 (1990) (finding mere-presence instruction was not supported by the evidence and constructive-possession instruction covered the notion of mere presence); Claxton, 276 F.3d at 423-24 (following Jordan). We conclude the district court did not abuse the discretion it has in framing the instructions.

## C.    Drug Quantity

In each defendant's case, the verdict form submitted to the jury required the jury to determine the quantity of cocaine involved.  According to the form, the jury was only to answer the quantity question if the jury found the defendant guilty of possessing with the intent to distribute a mixture or substance containing a detectable amount of cocaine.  Along with finding each defendant guilty, the jury indicated that each defendant's offense involved more than five kilograms of cocaine.  And the district court, adopting the findings of the presentence report as its own, found at sentencing that the amount attributable to each of the defendants was more than five kilograms, but less than fifteen kilograms.

Defendants challenge the sufficiency of the evidence regarding drug quantity. The evidence adduced at trial showed: four of the eighteen packages seized were sampled and sent for testing; the combined weight of these four packages was 2.2 kilograms, and each tested positive for cocaine; the remaining packages were not sampled or otherwise tested; the combined weight of all the packages was 5.94 kilograms; and all packages had the same general appearance.

Defendants Rios and Lopez-Urias contend that the evidence submitted to the jury was insufficient because it would not enable any reasonable jury to determine the quantity beyond a reasonable doubt.  Serrano-Lopez contends this error was one of sentencing; thus, his challenge is couched in terms of clear error.  Rios's and Lopez-Urias's arguments hinge on whether the drug quantity had to be proven to the jury beyond a reasonable doubt.  As support, Rios points to the fact five kilograms was the charged quantity in the indictment. Lopez-Urias argues that Apprendi v. New Jersey, 530 U.S. 466 (2000), requires that the quantity be determined by the jury in any case where it "has the effect in real terms of increasing the minimum or maximum punishment that could be imposed."  (Br. at 21 (emphasis omitted)).   Neither Apprendi nor the fact that the indictment charged the amount of drugs involved

-13-

requires that we find the evidence sufficient under the standard of review we apply to proof-beyond-a-reasonable-doubt determinations.

When a defendant is sentenced to a term that does not exceed the statutory maximum allowed for an indeterminate amount of the drug involved, the jury's determination of drug quantity is practically irrelevant. As our cases have established, even when a jury is not presented with the quantity question, a sentence imposed below the statutory maximum allowed by the jury's determination is proper, so long as the sentencing court was presented with sufficient evidence to support its drug calculation. United States v. Caldwell, 255 F.3d 532, 533 (8th Cir. 2001) (per curium); United States v. Ortiz, 236 F.3d 420, 422 (8th Cir. 2001); United States v. Aguayo-Delgado, 220 F.3d 926, 928-34 (8th Cir. 2000); accord United States v. Johnston, 353 F.3d 617, 624-26 (8th Cir. 2003) (holding that a sentencing court's drug-quantity calculation can exceed the jury's drug-quantity calculation—by over fifty times—so long as the sentence imposed does not exceed the maximum allowed by the jury's calculation and the sentencing court's calculation was supported by sufficient evidence). It follows that even if the evidence of quantity were insufficient for purposes of a jury's quantity calculation,[8] sufficient evidence for purposes of sentencing would justify the sentence imposed, if the sentence does not exceed the statutory maximum regardless of quantity.

The statutory maximum for possession with intent to distribute an indeterminate amount of cocaine is twenty years when neither "death or serious bodily injury results from the use of such substance" and the defendant has no prior convictions for felony drug offenses. 21 U.S.C. § 841(b)(1)(C). Each defendant was

---

[8]We express no opinion on whether the evidence in this case would sufficiently support a quantity determination that must be made by the jury. But the use of sampling in the quantity calculation has been upheld as a sufficient means of proving the elements of the offense under the circumstances of one case. See Gibson v. Bowersox, 78 F.3d 372, 374 (8th Cir. 1996).

-14-

sentenced to less than twenty years.[9]  Therefore, <u>Apprendi</u> does not require that the jury determine the drug quantity beyond a reasonable doubt.  We therefore review the district court's sentencing calculation as the relevant issue, not the jury's.

Contrary to Rios's argument, the fact that a drug quantity was included in the indictment does not change our analysis.  It is the statute, not the indictment, that sets the elements of the offense that must be proven beyond a reasonable doubt.  As we have explained, drug quantity is not such an element unless the quantity can and does lead to the imposition of a sentence greater than the otherwise applicable statutory maximum.  Here, the sentence was within the statutory maximum for an indeterminate amount of cocaine, so the drug quantity did not have to be included in the indictment or proven to the jury beyond a reasonable doubt under <u>Apprendi</u>.  The fact it was included in the indictment is irrelevant to our sufficiency-of-the-evidence inquiry.  <u>Cf.</u> <u>United States v. Mora-Higuera</u>, 269 F.3d 905, 911 (8th Cir. 2001), <u>cert. denied</u>, 537 U.S. 828 (2002).

A district court's drug-quantity calculation will be upheld unless clearly erroneous.  <u>United States v. Quintana</u>, 340 F.3d 700, 702 (8th Cir. 2003).  Serrano-Lopez claims the evidence was insufficient in two respects.  First, he claims the evidence concerning the weight of all the drugs was insufficient.  Second, he claims that even if the weights were sufficiently accurate, there was insufficient evidence concerning the kind of drugs contained in the fourteen unsampled packages.

We find that the officer's testimony enabled the judge to conclude the weights given by the officer were accurate.  Trooper Ayers testified that the scale was

---

[9]The fact the drug quantity determination subjected the defendants to a mandatory minimum of ten years of imprisonment, <u>see</u> 21 U.S.C. § 841(b)(1)(A), does not make <u>Apprendi</u> applicable.  <u>Aguayo-Delgado</u>, 220 F.3d at 933-34.

certified and Ms. Laird testified that such scales are purchased from a list provided to the Nebraska State Patrol by the Nebraska Criminalistics Laboratory.

With the weight sufficiently established, there is no dispute that the sampled packages contained 2.2 kilograms of cocaine. The question is whether the remaining fourteen unsampled packages—3.7 kilograms of material—contained cocaine. Sampling a few of many packages found in the same area has been held sufficient to establish that all packages contained the same controlled substance. See United States v. Brett, 872 F.2d 1365, 1372 (8th Cir. 1989) (holding that sampling of six out of eighty-two similar packages was sufficient). These packages were wrapped similarly, they were all found in the car, and they were before the court at trial. This is sufficient evidence from which the court could conclude by a preponderance of the evidence that they all contained cocaine. We therefore hold that the district court did not clearly err in concluding each defendant's offense involved over five kilograms of cocaine.

## D.    Denial of the Motion to Suppress

Rios contends the district court erred in denying her motion to suppress the drugs retrieved from the car. In reviewing the denial of a motion to suppress, "[w]e review the factual findings of the district court as to what the parties said or did for clear error; we review the district court's finding that the Fourth Amendment has not been violated de novo." United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1994) (en banc). The district court, adopting the report and recommendation of the magistrate judge, concluded that Rios had voluntarily consented to the search and that the officers developed probable cause for the warrantless vehicular search as soon as they opened the trunk and smelled methamphetamine. We see no clear error of fact, nor any error of law. We affirm for the reasons stated by the district court. See 8th Cir. R. 47B(1) & (4).

## III.    CONCLUSION

We affirm.

RILEY, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority in affirming the convictions of Elvia Rios (Rios) and Eleodoro Lopez-Uria (Lopez-Uria).  I write separately, because I conclude Isidro Serrano-Lopez (Serrano-Lopez) was entitled to have a "mere presence" instruction submitted to the jury.

### A.    Mere Presence Theory of Defense

The majority opinion believes the theory of defense for all defendants was focused on the two elements of constructive possession–knowledge and control. Supra at 12.  Serrano-Lopez focused his defense theory solely on his alleged mere presence.  Consistently throughout trial, Serrano-Lopez specifically argued he was arrested and charged based on his mere presence in the vehicle, his mere proximity to concealed drugs discovered in the vehicle, and his mere association with the vehicle's occupants and owner.  During closing argument, Serrano-Lopez's counsel argued to the jury that "[m]ere presence is not evidence of possession."  Serrano-Lopez's counsel also tendered to the court a proposed jury instruction, which correctly stated the law: "Mere physical proximity to contraband is insufficient to convict a person of possession with intent to distribute."  The district court denied the requested language, noting the court's instruction defining "possession with intent to distribute" is the circuit's model jury instruction, and the model instruction is adequate.  Model Criminal Jury Instruction of the Eighth Circuit § 6.21.841A.

### B.    Mere Presence Instruction

In this circuit a defendant is entitled to an instruction on his theory of defense, if there is evidence to support the instruction, and if the instruction contains a correct

statement of the law.  United States v. Gonzales, 90 F.3d 1363, 1371 (8th Cir. 1996); United States v. Long Crow, 37 F.3d 1319, 1323 (8th Cir. 1994).  We review de novo the question of whether sufficient evidence existed to submit an affirmative theory of defense, but we review for an abuse of discretion a district court's refusal to give a "theory of defense" instruction.  Id.; United States v. Davis, 103 F.3d 660, 668 (8th Cir. 1996).

The propriety of giving a "mere presence" or "mere proximity" instruction depends on what the government proved about the defendant's alleged involvement in the crime.  The First Circuit has noted:

> The "mere presence" defense has become, at one and the same time, both the last haven of the innocent and the last refuge of the scoundrel. Although courts have found it applicable in certain situations, the mere presence defense is not so ubiquitous as to envelop every drug-trafficking case in which the government lacks direct evidence of a defendant's complicity. The defendant's presence at a place where contraband is found may or may not be purely coincidental. The attendant circumstances tell the tale–and the culpability of a defendant's presence hinges upon whether the circumstances fairly imply participatory involvement.  In other words, a defendant's "mere presence" argument will fail in situations where the "mere" is lacking.

United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993) (internal citation omitted).  Thus, the dispositive question is whether the government's case against Serrano-Lopez rested upon mere presence, mere proximity, or mere association.

I conclude the government's case against Serrano-Lopez rested almost exclusively on Serrano-Lopez's presence in the front passenger seat; his proximity to drugs concealed inside the dash, rocker and kickers panels; his association with the vehicle's occupants; and his admission that he knew who owned the vehicle.  The government's case adduced no particularized evidence that Serrano-Lopez knew

drugs were concealed inside the vehicle or that he exercised or intended to exercise dominion or control over the drugs. In its opening statement, the government never discussed Serrano-Lopez other than identifying him as the front seat passenger. In its summation, the government only argued Serrano-Lopez was in the front passenger position; he knew who owned the car, and the name he gave corresponded with the name on the registration; and he had a driver's license, from which the jury could reasonably infer Serrano-Lopez at some point must have driven the car during the trip from Los Angeles to Nebraska. After defense counsel delivered their closing arguments, with Serrano-Lopez's counsel arguing mere presence, the government in rebuttal never addressed Serrano-Lopez's defense nor even mentioned Serrano-Lopez.

The trial transcripts reflect slim evidence against Serrano-Lopez. In February 2002, Trooper Ayers stopped a vehicle for speeding on Interstate 80 in central Nebraska. Serrano-Lopez was seated in the front passenger seat. After Trooper Ayers spoke to Rios, the driver, the trooper attempted to speak to Serrano-Lopez. Trooper Ayers asked Serrano-Lopez a series of questions: (1) whether Serrano-Lopez knew the name of the driver and the name of the vehicle's owner; (2) where the vehicle had departed from and its destination; (3) whether the vehicle stopped in Arizona; (4) whether Serrano-Lopez had any identification; and (5) why Serrano-Lopez was traveling to Omaha.

At trial, Trooper Ayers testified Serrano-Lopez spoke little English, and Trooper Ayers conceded he did not understand everything Serrano-Lopez told him, and Serrano-Lopez did not understand everything the trooper was saying. Trooper Ayers testified Serrano-Lopez told him the driver's name was "Sylvia"; the vehicle owner's name was "Gonzalo"; the four occupants were traveling from Los Angeles to Omaha; the vehicle had not stopped in Arizona; and he was traveling to Omaha to visit a relative named Pablo. Trooper Ayers also testified Serrano-Lopez produced a valid California operator's license and, when arrested an hour later, Serrano-Lopez

-19-

did not act surprised or ask the reason for his arrest. Testimony from other law enforcement witnesses established Serrano-Lopez was the third person picked up in California, that he knew the backseat passengers, and he worked at an International House of Pancakes.

On appeal, the government contends its case against Serrano-Lopez is not a mere presence case, arguing a jury could reasonably infer Serrano-Lopez's knowledge of the drugs from his admission that he knew the name of the vehicle's owner coupled with Serrano-Lopez's inconsistent statements. The government's brief expends three sentences on the sufficiency of the evidence supporting Serrano-Lopez's conviction:

> Trooper Ayers stated that Serrano-Lopez was the only one who knew the name of the owner of the car. Serrano-Lopez was also the only defendant other than Rios to have an operator's license. Thus, a reasonable jury could infer not only that Serrano-Lopez and Rios drove and controlled the Nissan and therefore had possession of the cocaine, but that they knew the drugs were hidden there.

The evidentiary issue of whether these are reasonable inferences deducible from the evidence or unreasonable inferences used to bridge gaps in the government's proof descends us into polemics. Regardless, the government presented de minimus evidence, and even less argument, supporting its theory that Serrano-Lopez knew of and exercised control, or intended to exercise control, over the concealed drugs.

The government also contends in its brief that Serrano-Lopez made an inconsistent statement to Trooper Ayers, but fails to explain how or why Serrano-Lopez's alleged statement about coming to Omaha to visit his relative named Pablo was inconsistent. The government must presume we can reasonably infer the inconsistency. The government presented no evidence Serrano-Lopez changed or recanted this statement. At the suppression hearing, Serrano-Lopez's counsel pointed out to Trooper Ayers that when the trooper questioned Serrano-Lopez during the

traffic stop, Trooper Ayers had not, as he believed, asked Serrano-Lopez in Spanish why the <u>occupants</u> were traveling to Omaha, but had instead asked Serrano-Lopez why <u>he</u> was traveling to Omaha.

The record establishes the driver's first name was "Elvia," which rhymes with "Sylvia," the name Trooper Ayers believed Serrano-Lopez stated; the vehicle's registration was issued to an individual with the surname "Gonzalo"; the vehicle had departed from the Los Angeles area destined for Omaha; and, for all the government knew, Serrano-Lopez was traveling to Omaha to visit a relative named Pablo. The jury heard no evidence that Serrano-Lopez knew drugs were secreted inside the vehicle, that contraband was found on his person, that he had received payment for making the trip, that he used drugs or had been charged previously with a drug offense, or that he, at any time during the journey, drove the vehicle. Serrano-Lopez's mere presence theory of defense has an adequate foundation in the evidence.

The final inquiry is whether the jury instructions, as submitted to the jury, adequately and correctly covered the substance of the requested instruction. <u>See</u> <u>United States v. Manning</u>, 618 F.2d 45, 48 (8th Cir. 1980) (reversing district court and noting the instructions given did not cover the substance of the defense). The district court denied Serrano-Lopez's requested "mere presence" language, opting instead to instruct the jury only on "possession with intent to distribute" and "possession," using two model instructions. <u>See</u> Model Criminal Jury Instructions of Eighth Circuit §§ 6.21.841A & 8.02. From the record, it appears the district court did not consider submitting a separate instruction on "mere presence."

At least two of our sister circuits have addressed the issue of whether a separate "mere presence" instruction is needed in addition to a model instruction defining "possession." Reviewing a longer and more detailed, but similarly worded, "possession" instruction, the Fifth Circuit held the "possession" instruction obviated the need for a separate "mere presence" instruction, because "possession" requires a

finding of intent to exercise dominion or control over contraband. United States v. Prudhome, 13 F.3d 147, 149-50 (5th Cir. 1994).

The Second Circuit also held a "mere presence" instruction was unnecessary because the definitional instruction of "actual and constructive possession" required the jury to find the defendant intended to exercise dominion or control over the contraband and added *"possession could not be established by accident or mistake."* United States v. Vasquez, 82 F.3d 574, 577 (2d Cir. 1996) (emphasis added). The jury instructions in Vasquez further instructed:

> [T]he person who's knowingly in possession, his possession occurs voluntarily and intentionally and not because of mistake or accident. The defendant simply may not be convicted of possession of a firearm if he did not intend to possess it.

Id.

In relatively few cases, such as this one, where the government presents an exceptionally slim evidentiary case of constructive possession against one or more defendants, the Eighth Circuit model "possession with intent to distribute" and model "possession" instructions, standing alone, do not adequately convey a "mere presence" defense theory to which a defendant is justly entitled. Unlike the model aiding and abetting and model conspiracy agreement instructions, the model "possession with intent to distribute" instruction contains no express language stating that "merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person" had knowledge of the contraband and intended to possess it. Compare Model Criminal Jury Instructions for the Eighth Circuit §§ 5.01, 5.06B, with §§ 6.21.841A. Nor does the model "possession" instruction inform jurors that possession cannot be established by "accident or mistake." Compare Model Criminal Jury Instructions for the Eight Circuit § 8.02, with Vasquez, 82 F.3d at 577.

-22-

During its deliberations, the Serrano-Lopez jury grappled with the model "possession with intent to distribute" and "possession" instructions. The jury submitted four written questions to the district court, three of which concerned the legal concept of "possession." The jury first asked, "Would constructive possession, given the second element, be relevant?" Next, the jury asked, "Must it be <u>actual</u> possession to satisfy all essential elements?" Thirty-five minutes later, the jury asked, "What is [the] definition of 'Controlled Substance'?" and "What is [the] definition of 'Dominion'?" The district court replied to the jury's first two questions, advising the jury that all the instructions were relevant, and all the essential elements could be satisfied by finding the defendant's possession was constructive. The district court declined to define the terms "controlled substance" and "dominion" for the jury. Given the jury's patent difficulty in understanding and applying critical concepts and key terms in the model "possession with intent to distribute" and "possession" instructions, hindsight indicates a "mere presence" instruction probably would have assisted the jury.

"A district court's refusal to provide a requested instruction warrants reversal only if the refusal prejudices the defendant." <u>United States v. Davis</u>, 237 F.3d 942, 945 (8th Cir. 2001). It could be argued the district court's refusal to give a mere presence instruction did not prejudice Serrano-Lopez, because his counsel was permitted to argue the defense theory. An oral statement by counsel, even if repeated several times during the course of a two-day trial, does not have the force and effect of a jury instruction delivered by the court. The absence of a conforming instruction may tell the jury, by its omission, that defense counsel's arguments are not the law.

The trial transcript reveals the district court received a note from the jury stating, "We have reached a verdict on two of the defendants. We are in a deadlock on the other two. What are the next steps?" With the approval of all counsel, the district court received the jury's two verdicts, finding both Urias-Lopez and Rios guilty of possession with intent to deliver five kilograms or more of a substance

containing cocaine.  Later, the jury returned a guilty verdict against Serrano-Lopez and a verdict of acquittal against the fourth defendant.  I cannot, with any confidence, conclude Serrano-Lopez was not substantially prejudiced by the court's refusal to instruct the jury on mere presence.

Consequently, I would reverse Serrano-Lopez's conviction and remand his case for a new jury trial with a mere presence instruction.

_____