LOKEN, Circuit Judge,
dissenting.
The majority opinion accurately summarizes the traffic stop, the consensual search of the vehicle Luis Aponte was driving from Chicago to Cheyenne, Wyoming, and the discovery of a significant quantity of methamphetamine secreted inside the lining of a cooler found in the Nissan Xter-ra’s cargo area. The majority also fairly recounts the government’s case-in-chief and Aponte’s trial testimony, except it omits his significant admission on cross-examination that he never told the investigating officers that Miguel Lira, purportedly the son of the vehicle’s owner, Maria Victoria Usuga, originally intended to join Aponte and Tapia-Valentin on the trip to Wyoming but got a job the day before they departed and simply delivered Usuga’s vehicle to Aponte. The majority fails to consider, however, what a jury could reasonably conclude if it rationally disbelieved all or substantially all of Aponte’s self-serving testimony. I conclude disbelief is entirely rational on this record. Therefore, as we are obliged to draw all reasonable inferences and resolve all evidentiary conflicts in favor of the jury verdict, I submit we must assume the jury discredited Aponte’s testimony. Combined with the government’s circumstantial evidence, this provides sufficient evidence to find, beyond a reasonable doubt, that the defendants knowingly possessed the methamphetamine. Accordingly, I respectfully dissent.
Aponte testified at trial that he and his passenger, Tapia-Valentin, were unemployed after Aponte’s restaurant closed and were driving to Cheyenne to attend a party at his cousin’s home, though he did not know her address. According to Aponte, Miguel Lira intended to make the trip to Cheyenne but did not because he had found work. Instead, Lira loaned Aponte a car that belonged to Lira’s mother, who was a former cook at Aponte’s restaurant, and delivered the vehicle to Aponte’s house the night before Aponte and Tapia-Valentin began the trip. Aponte claimed that he put his bag in the back seat of the Xterra, never saw the cooler in the cargo area, and had no knowledge of the cooler’s contents. He admitted that he owned or had access to two other vehicles at the time he borrowed Usuga’s car for the trip.
There are many reasons a rational jury could disbelieve Aponte’s testimony that he did not know what was hidden, not too carefully, in the cooler’s lining.
*810 —Aponte was unemployed and had access to two other vehicles, yet he implausibly claimed to be driving half-way across the country in a borrowed vehicle to attend a one-day party at a cousin’s home, having never been to Cheyenne and not knowing his cousin’s address.
—The jury viewed a video recording of the traffic stop that impeached Aponte’s testimony in several respects. When first asked why he was going to Cheyenne, Aponte said that his cousin lived there, but did not mention a party. Tapia-Valentin then gave an inconsistent answer about the purpose of the trip, telling Officer Bargs-tadt they were going to attend a party with Aponte’s cousin. When Aponte was then asked whether he planned to party in Cheyenne, Aponte said yes but added, “we’re not going crazy.” When Tapia-Valentin was then asked again about the purpose of the trip, he replied, “I don’t know, because they closed the restaurant ... [inaudible] ... We don’t got work now.”
—Aponte testified he knew Usuga’s last name when the police questioned him, an assertion directly contradicted by the video.
—Aponte testified that he put his bag in the back seat and never saw the cooler in the cargo area, but the video showed a bag in the cargo area, and the officers testified there was only one bag in the vehicle when they searched it.
The majority improperly analyzes these pieces of evidence in isolation; the issue is whether a reasonable jury could draw an inference of knowledge from the totality of the circumstances. See United States v. Serrano-Lopez, 366 F.3d 628, 636 (8th Cir. 2004); United States v. Butler, 238 F.3d 1001, 1003 (8th Cir.2001).
—Perhaps most significantly, as the government emphasized in closing argument, Aponte’s story carefully avoided incriminating either Lira or Usuga despite describing a scenario in which someone connected with the closed restaurant almost surely was responsible for the shipment of methamphetamine that left Chicago. This is not a case like United States v. Pace, 922 F.2d 451, 453 (8th Cir.1990), where the passenger co-defendant testified that Pace was merely hired to drive a car containing the passenger’s concealed cocaine. Here, Aponte and Tapia-Valentin were obvious “insiders” for a long trip, the principal purpose of which was drug trafficking. This brings into sharp and incriminating focus the government’s evidence that it is unlikely drug dealers would misplace $25,000 worth of methamphetamine, or put this valuable contraband “in the hands of people who do not even know it is there.” Serrano-Lopez, 366 F.3d at 635.
In these circumstances, a reasonable jury could find that Aponte’s explanation for the trip was a cover story to hide what Aponte and Tapia-Valentin knew was their true purpose, to deliver the methamphetamine hidden in the cooler. It was for the jury to determine whether Aponte’s denial of knowledge was too implausible to be true. Its credibility finding is, according to a host of Eighth Circuit decisions, “virtually unreviewable on appeal.” E.g., United States v. Morris, 327 F.3d 760, 761 (8th Cir.), cert. denied, 540 U.S. 908, 920, 124 S.Ct. 282, 313, 157 L.Ed.2d 197, 218 (2003). Instead, contrary to our proper function as an appellate court, the majority reverses a jury verdict because, as jurors considering only the cold record on appeal, they would have acquitted these defendants. I would affirm both convictions.