# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1170

_____

United States of America

*Plaintiff - Appellee*

v.

Efrain Orozco

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 21, 2012
Filed: December 3, 2012

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Defendant Efrain Orozco of two counts of possessing cocaine with intent to deliver in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) (cocaine), and 841 (b)(1)(A)(iii) (cocaine base). The district court[1] imposed a ten-

_____

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

year statutory-mandatory-minimum sentence on Count 2 (the count involving cocaine base) and a concurrent 97-month sentence on Count 1. Orozco appeals, arguing via counsel in his opening brief that evidence discovered in a vehicle search should have been suppressed and that there was insufficient evidence to support his conviction. He also argues via a pro-se motion for replacement counsel that he should have received the benefit of the amended cocaine-base provisions in the Fair Sentencing Act of 2010 (the "Act"), 124 Stat. 2372. The Act went into effect on August 3, 2010, after Orozco committed his offense but prior to his sentencing.

We reject his arguments regarding the suppression issue and the sufficiency of the evidence but remand to the district court to address the applicability of the Act given the retroactivity of the Act as determined by the Supreme Court in Dorsey v. United States, 567 U.S. ——, 132 S. Ct. 2321 (2012). In addition, we deny the motion for replacement counsel.

I.

Orozco and another driver were driving a commercial truck with an empty flatbed trailer through Missouri. When Orozco was in a sleeping berth and the other driver was operating the vehicle, a commercial vehicle officer ("officer") stopped the truck. The parties agree that the initial stop was a permissible regulatory stop. The officer questioned the driver and collected various materials for inspection, including each man's license and log book as well as the truck's bill of lading.

Upon inspecting the materials, the officer noticed several inconsistencies. The officer contacted the Missouri State Highway Patrol for assistance because the officer found the inconsistencies suspicious and because troopers with the Missouri State Highway Patrol possess greater investigatory authority than commercial vehicle officers. When a trooper arrived, the trooper spoke briefly with the officer then asked the other driver for permission to search the truck. The other driver granted

-2-

permission without limitation, and he and Orozco exited the vehicle at the trooper's request.

When searching the vehicle, the trooper noticed stripped screws on a light cover, removed the screws, and discovered concealed bundles. While the trooper was conducting the search, Orozco and the other driver fled on foot. The two men were later found and arrested. A later, more thorough search revealed 62 cellophane-wrapped bundles containing approximately $1.4 million (primarily in $20 bills), 2.8 kilograms of powder cocaine, and slightly over 55 grams of cocaine base.

Orozco moved to suppress the evidence seized from the truck. He conceded the initial stop was permissible. He argued, however, that the purpose of the stop shifted at some point from a permissible regulatory stop to an impermissible general investigatory stop unsupported by adequate suspicion. A magistrate judge[2] prepared a report and recommendation denying the motion. In the report, the magistrate judge found that the regulatory stop was permissible and that the other driver's consent to search was valid. The report then stated that the officer worked on paperwork related to the regulatory stop until such time that the trooper obtained consent such that the stop was not elongated beyond the length of time associated with the permissible regulatory purpose. Finally, the report stated that, even if the stop had been elongated beyond the time necessary for the regulatory stop, reasonable articulable suspicion existed based upon the inconsistencies in the paperwork and justified any purported extension. The district court adopted the report in full.

A jury subsequently convicted Orozco, and the district court imposed the sentence identified above. On appeal , Orozco argues that the suppression ruling was

---

[2]The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

incorrect, the evidence was insufficient to support his conviction, and the Court's ruling in Dorsey entitles him to resentencing.

## II.

We review the district court's denial of the suppression motion de novo and its underlying factual determinations related to the suppression issue for clear error. See United States v. Lomeli, 676 F.3d 734, 738 (8th Cir. 2012) (describing the "two-pronged standard of review"). Because the initial stop and the later-acquired consent were valid, Orozco cannot establish a Fourth Amendment violation in this case unless the officer impermissibly extended the stop without reasonable articulable suspicion. See United States v. Briasco, 640 F.3d 857, 859 (8th Cir. 2011) ("To delay a vehicle's occupants after an initial traffic stop has been completed, there must be particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." (internal quotation marks omitted)). Orozco does not point to any evidence suggesting that, before the other driver gave valid consent to the trooper, the officer extended the stop beyond that time necessary for the regulatory stop. The magistrate judge determined that the officer was working on paperwork related to the initial stop when waiting for the trooper to arrive, and Orozco does not challenge this finding. As such, the entire stop preceding the grant of consent was constitutionally reasonable, and we need not address the district court's alternative holding that the document discrepancies gave rise to reasonable suspicion.

Orozco's sufficiency-of-the-evidence argument is similarly without merit. Viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in the government's favor, we must affirm unless we conclude that "no reasonable jury could have found guilt beyond a reasonable doubt." United States v. Herbst, 666 F.3d 504, 510 (8th Cir. 2012). In conducting this analysis, the jury's credibility assessments are "virtually unassailable." United States v. Varner,

678 F.3d 653, 657 (8th Cir. 2012).  Orozco focuses his argument upon the issues of constructive possession and intent to distribute.

At trial, an expert testified that it was extremely unlikely that such a large quantity of money and drugs would be placed in a vehicle without the occupant's knowledge.  See United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004) ("[I]t is unlikely that the owner would place approximately $130,000 worth of cocaine in the hands of people who do not even know it is there.").  Further, Orozco's log book discrepancies, his flight from the scene, and the simple fact that he was a driver of the vehicle, taken together, are more than sufficient to support the verdict. See id. at 635 ("[P]resence in a vehicle containing contraband . . . and other evidence can give rise to an inference of control."); United States v. Willis, 89 F.3d 1371, 1377 (8th Cir. 1996) (a vehicle occupant's status as a driver can show the dominion and control necessary to establish constructive possession of hidden drugs); United States v. Clark, 45 F.3d 1247, 1250 (8th Cir. 1995) (holding it is permissible to instruct jury that "flight may evidence consciousness of guilt").  Although Orozco presents what he characterizes as noninculpatory explanations for the log-book inconsistencies and his flight, the jury rejected his arguments, and we may not second-guess the jury's determinations.  Similarly, he argues that the evidence of constructive possession shows only that one of the drivers was in possession of the money and cocaine, not that he—rather than the other driver—possessed the contraband.  Again, the jury rejected this argument.  Finally, the large quantity of drugs and money are sufficient to support an inference of intent to distribute.  See Serrano-Lopez, 366 F.3d at 635 ("A large quantity of drugs . . . is sufficient evidence of . . . intent to distribute.").

## II.

Orozco's argument concerning the Fair Sentencing Act, however, appears to hold merit.  The presentence investigation report (PSR) identified a drug quantity of 2.8 kilograms of cocaine for Count 1 and a drug quantity of approximately 55 grams

of cocaine base for Count 2. Under the applicable mandatory minimum sentences in place at the time Orozco committed the offenses these quantities resulted in a mandatory minimum sentence of five years for Count 1, 21 U.S.C. § 841(b)(1)(B)(ii), and ten years for Count 2, 21 U.S.C. § 841(b)(1)(A)(iii). The Act, however, raised the threshold quantity of cocaine base for a ten-year statutory minimum sentence from 50 grams to 280 grams. A review of the sentencing transcript and PSR (which the district court accepted in full) shows that the sentencing court found the relevant quantity for Count 2 to be slightly over 55 grams of cocaine base. As such, the court relied upon the ten-year statutory minimum for Count 2 and found it unnecessary to address issues that could not affect the mandatory sentence.

No party raised the issue of the possible retroactive application of the Act at Orozco's sentencing. Had they done so, our controlling precedent at the time would have precluded its application. United States v. Sidney, 648 F.3d 904, 910 (8th Cir. 2011). The Supreme Court has since held that the Act applies to defendants who committed their offense prior to the Act's effective date, but who were sentenced later. See United States v. Davis, 690 F.3d 912, 928 (8th Cir. 2012) (recognizing Dorsey's abrogation of Sidney). Given the drug quantities at issue, it appears Orozco may be entitled to the benefit of the Act. Because he raised this issue in a pro-se motion for replacement counsel, however, the issue is not fully developed. Accordingly, we remand for resolution of this issue by the district court

III.

We affirm the judgment of conviction, but remand to the district court to address the applicability of Dorsey and the possibility of resentencing. The district court may also address any other sentencing issues that may now appear material in the possible absence of the ten-year statutory minimum.

_____