# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 03-1329

_____

United States of America,                    \*
                                             \*
    Appellant,            \*
                                             \*  Appeal from the United States
  v.                                \*  District Court for the
                                             \*  Northern District of Iowa.
Erick Arias Campos,                           \*
                                             \*   [PUBLISHED]
    Appellee.             \*


_____

Submitted:  October 23, 2003
Filed:  April 1, 2004

_____

Before BYE, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

When police searched Erick Arias Campos's bedroom, they found 50.6 grams of methamphetamine, a firearm, a loaded ammunition clip, and a box of ammunition. A grand jury charged Campos with being an illegal alien in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(5)(A) (2000), and possessing with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (2000). Campos pleaded guilty to the firearm charge but proceeded to trial on the drug charge. After the petit jury found him guilty, the district court granted Campos's motion for a new trial on

the drug charge.  The government appealed, and we reversed, concluding "that the evidence was more than legally sufficient for the jury to find that Campos intended to distribute the methamphetamine."  United States v. Campos, 306 F.3d 577, 582 (8th Cir. 2002).  We reinstated Campos's conviction and remanded for sentencing.

The presentence report recommended, as relevant, that Campos be held responsible for possessing 50.6 grams of methamphetamine mixture with intent to distribute, that he receive an obstruction-of-justice enhancement for perjuring himself at trial, and that he not receive an acceptance-of-responsibility reduction.  Campos objected to these recommendations, arguing that he intended some or all of the methamphetamine mixture for personal consumption, that he had not obstructed justice, and that he had accepted responsibility.[1]

---

[1]The government adequately made the district court aware that it supported the recommendations of the presentence report and opposed Campos's objections. Contrary to the dissent's characterization, counsel for the government did not concede the issue or invite error.  Rather, after stating the government's position, counsel--at the district court's invitation--engaged in a respectful exploration of the opposite point of view with the district court, acknowledging nothing more than the arguable merit of that point of view.  The government did not abandon its position that the correct amount for sentencing purposes was the amount determined beyond a reasonable doubt by the jury.

Moreover, even if we were limited to plain-error review, we would still reverse.  The dissent cites cases holding that errors which shortened the defendants' sentences by 12 and 15 months, respectively, were not miscarriages of justice.  However, we have previously held that an error which lengthened a defendant's sentence by 21 months was a miscarriage of justice, United States v. Marsanico, 61 F.3d 666, 668 (8th Cir. 1995), and we think that the result should be the same when an error shortens a defendant's sentence by an equal or greater amount.  In the instant case, the district court's drug-quantity error shortened Campos's sentence by anywhere from 34 to 43 months.  It goes without saying that both the defendant and the people of the United States are entitled to equal justice.

The district court sustained two of Campos's objections. First, the court estimated that Campos had possessed 25% of the methamphetamine with intent to consume it himself and had possessed 75% of it with intent to distribute it to others. Second, the court concluded that Campos's case was "extraordinary" within the meaning of U.S. Sentencing Guidelines Manual § 3E1.1, comment. (n.4) (2002), allowing him to receive an acceptance-of-responsibility reduction despite the court's application of an obstruction-of-justice enhancement. These rulings lowered Campos's Guidelines imprisonment range from 97-121 months to 51-63 months, with a statutory minimum of five years in prison. The court sentenced Campos to 60 months in prison and four years of supervised release.

The government again appeals. For the reasons discussed below, we vacate the sentence imposed by the district court and remand for resentencing.

I.

Campos was prosecuted after Apprendi v. New Jersey, 530 U.S. 466 (2000), and United States v. Aguayo-Delgado, 220 F.3d 926 (8th Cir.), cert. denied, 531 U.S. 1026 (2000), were decided. Drug quantity was therefore charged in the indictment and proved to the petit jury beyond a reasonable doubt. As noted above, the grand jury charged Campos with possessing 50 grams or more of methamphetamine mixture with intent to distribute. The petit jury was instructed as follows.

First, in Instruction Three, the jury was asked to determine beyond a reasonable doubt whether Campos had committed the offense simpliciter by knowingly possessing any quantity of methamphetamine and intending to distribute some or all of it. The jury answered affirmatively and turned to the next question. Second, in Instruction Four, the jury was directed to "determine beyond a reasonable doubt the amount of the methamphetamine involved in the offense for which the defendant can be held responsible," meaning "the quantity of methamphetamine he possessed with intent to distribute." The jury found that Campos had possessed 50 grams or more

3

of methamphetamine with intent to distribute it, rejecting the alternative of finding that he had possessed less than 50 grams of methamphetamine with intent to distribute.

Given the petit jury's finding as to the element of drug quantity, the district court erred as a matter of law by concluding that Campos intended 25% of the methamphetamine for personal consumption. See United States v. Cockett, 330 F.3d 706, 711 (6th Cir. 2003) (a district court errs as a matter of law if, when determining a defendant's sentence under the Guidelines, the court relies on a finding that directly conflicts with the jury's verdict). Once the jury found beyond a reasonable doubt that the amount of methamphetamine Campos had intended to distribute was 50 or more grams, it was a legal impossibility for the district court to find by a preponderance of the evidence that the amount of methamphetamine Campos intended to distribute was less than 50 grams. See, e.g., United States v. Reed, 264 F.3d 640, 648 (6th Cir. 2001) (where the defendant's intent to facilitate drug trafficking was an element of the offense of conviction, and the jury found the existence of that element beyond a reasonable doubt when convicting him, the district court was foreclosed from concluding at sentencing that he did not intend to facilitate drug trafficking), cert. denied, 525 U.S. 962 (2002). It is axiomatic that a fact proved beyond a reasonable doubt cannot simultaneously be disproved by a preponderance of the evidence.

## II.

As noted above, Campos pleaded guilty to the firearm charge and went to trial on the drug charge. At trial, he admitted that he knowingly possessed the methamphetamine but denied that he intended to distribute it to others. The district court reasoned that despite receiving an obstruction-of-justice enhancement for perjuring himself at trial by denying his intent to distribute,[2] Campos deserved an

---

[2] Campos did not cross-appeal the district court's application of the obstruction-of-justice enhancement, so the only matter before us is the government's

4

acceptance-of-responsibility reduction for pleading guilty to the firearm charge and admitting at trial some elements of the drug charge. We will assume *arguendo* that Campos's denial at trial of a factual element of the drug offense does not automatically preclude him from consideration for an acceptance-of-responsibility reduction. But see USSG § 3E1.1, comment. (n.2) ("[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial"); United States v. Chapman, No. 03-1490, 2004 WL 86654, at *3 (8th Cir. Jan. 21, 2004) ("In practice, . . . holding the government to its burden of proving the defendant's factual guilt presents a near absolute bar to a defendant receiving a reduction.") We proceed to analyze the district court's conclusion that Campos's case was "extraordinary" within the meaning of USSG § 3E1.1, comment. (n.4)

Application Note 4 instructs that a defendant who has obstructed justice ordinarily has not accepted responsibility, but that an obstruction-of-justice enhancement and an acceptance-of-responsibility reduction may both apply in "extraordinary cases." In United States v. Honken, 184 F.3d 961, 968-69 (8th Cir.), cert. denied, 528 U.S. 1056 (1999), we formulated the following test:

> To determine whether a case is "extraordinary," the district court should have taken into account the totality of the circumstances, including the nature of the appellee's obstructive conduct and the degree of appellee's acceptance of responsibility. Among other things, the district court should have considered whether, for example, the obstruction of justice was an isolated incident early in the investigation or an on-going effort to obstruct the prosecution. It should have considered whether appellee voluntarily terminated his obstructive conduct, or whether the conduct was stopped involuntarily by law enforcement. The district court should have noted whether appellee admitted and recanted his obstructive conduct, or whether he denied obstruction of justice at sentencing. Moreover, in our opinion the district court should have also weighed not

_____

appeal of the application of the acceptance-of-responsibility reduction.

5

only whether the defendant pleaded guilty to the underlying offense but also whether he assisted in the investigation of his offense and the offenses of others. We observe and note that there is no magic formula for defining an "extraordinary case," but we hold it was error for the district court to hold as a matter of law that mere cessation of obstructive conduct coupled with a guilty plea to the underlying offense necessarily makes a case extraordinary for purposes of § 3E1.1, application note 4.

(citations omitted).

Our standard of review is clear error, and we conclude that the district court clearly erred by granting Campos an acceptance-of-responsibility reduction despite imposing an obstruction-of-justice enhancement. The district court found that Campos obstructed justice by perjuring himself at trial by denying that he intended to distribute methamphetamine. This form of obstruction of justice was an ongoing effort to thwart his prosecution rather than an isolated incident early in the investigation. Campos did not voluntarily terminate his obstructive conduct: he denied this element of his factual guilt at trial, in his motion for a new trial, and in the prior appeal. Campos did not recant at sentencing; he vigorously maintained that at least half, if not all, of the methamphetamine was not intended for distribution. Finally, Campos did not assist in the investigation of his offense or the offenses of others. In short, his limited demonstration of acceptance of responsibility did not so outweigh his extensive obstruction of justice as to make this an "extraordinary case."

### III.

We do not doubt that the district court was motivated by a good-faith and well-intentioned desire to fashion what it believed to be a fair sentence for Campos. However, the sentence the district court constructed is contrary to law. Accordingly, we vacate that sentence and remand for resentencing within the correct Guidelines imprisonment range of 97-121 months.

BYE, Circuit Judge, concurring in part and dissenting in part.

I agree the district court clearly erred by reducing Campos's sentence for acceptance of responsibility despite imposing an obstruction-of-justice enhancement. I also agree the district court erred in reducing the drug quantity for personal use amounts, because the reduction conflicts with the jury's verdict. The government did not object to the district court's drug quantity reduction at the time of sentencing, however, so I disagree the government preserved the issue for appeal, other than for plain-error review. In fact, the government not only failed to object, but led the district court to believe it could find a drug quantity, for sentencing purposes, lower than the amount the jury found. Because I do not believe the drug quantity reduction amounted to plain error, I respectfully dissent in part.

When the district court first asked for the government's position on Campos's objection to the drug quantity calculations in the presentence report (PSR), it is true the government initially stated it supported the PSR's recommendations:

Court:     Okay, Mr. Wehde, what's your position on this [the PSR's drug quantity calculations]?

Counsel:   Your Honor, our position on this is, simply put, the quantity that the Court should take into consideration for drug quantity is the 50.6 grams based on, one, the jury verdict in regards to this particular case which was a beyond a reasonable doubt finding by the triers of fact. They did check the box of 50 grams or more in regards to their finding of the defendant's guilt of possession with intent to deliver.

Sentencing Transcript at 7-8.

Later, however, the district court asked the government whether the jury's verdict conclusively ruled out the possibility that some amount could be attributed to personal use, and the government's counsel was less than resolute in response:

7

Court:      Well, I don't remember how the verdict form was set up, and I haven't gone back to look at it. Did the jury conclusively decide beyond a reasonable doubt that there was no personal use with regard to this quantity in your view?

Counsel:    I don't see there was anyplace for them to make that determination in regards to the jury instructions. The only thing that I could see that they did that I recall – and again, this is my memory of the jury verdict when I was working on the appeal – is that they did check 50 grams or more. But that is the only thing that I can recall which could be called a conclusive finding that could be argued against.

Id. at 9.

The district court continued to press, specifically asking the government whether it would be error to reduce the drug quantity for personal use amounts, and the government's counsel equivocated even more:

Court:      Let me ask you this: In your view would it be error for me to find some quantity of this for personal use?

Counsel:    I'm not really sure. I think that it could be considered error based on the finding of the jury, but I think that there's another – there is a plausible argument that he could be a user and that a portion of this was for use because – I mean, if you look back at the Eighth Circuit's ruling and you look back at a lot of the arguments the parties made, there weren't a lot of items of packaging. It was broken down into a couple of baggies and a couple of chunks. It was not divided out. That kind of cuts that he is not a major drug dealer, but it kind of cuts that he had enough of a quantity whether at a fire sale or what that he was going to use that to obtain something in return for it. But I'm not really answering the Court's question, but I don't really have an adequate –

Court:      You're doing the best you can. I appreciate that.

8

Counsel: It cuts both ways.  Essentially we have before the Court only his testimony that he used in this type of situation and he used with a dollar bill or he could use in other methods.  He did present testimony from a friend and from the house who said that he saw him at one time had lined-up lines which would be consistent with his method of use either with a pen casing or a rolled-up dollar bill, but he acknowledged on cross-examination he'd never actually seen him use.  The girlfriend – I think the defendant even testified himself she had never seen him use.  There's basically no other corroborating feature to that.  We're left with his testimony which banking – you balance that with his other testimony which we feel is incredible.  I think the Court made that finding, but then maybe his testimony about use was accurate.

Id. at 9-11.

As the colloquy between the district court and the government continued, counsel eventually agreed the evidence presented at trial supported a claim that some of the drugs were for personal use:

Court: And you'd agree with me, would you not, that the evidence is at least consistent with the fact that the defendant was a personal user?

Counsel: There is some evidence that would be consistent with that.  It's a case where there isn't a lot of evidence . . . . [T]here really isn't a lot to show either way.

Court: But it's not inconsistent with the evidence that there was some personal use.

Counsel: No.  I cannot in good conscience say that.  I mean, I can say I agree with you on that.

Id. at 11-12.

9

Following this colloquy, the government never objected when the district court announced it was reducing the drug quantity to reflect an amount for personal use. Id. at 13. In fact, the government helped the district court with the calculations to determine the corresponding base offense level. Id. at 14. Finally, just prior to the actual sentencing, the district court asked both counsel if they had anything else to add. The government's counsel answered in the negative. Id. at 24, 25.

Based on this record, it is clear the government represented to the district court it could properly make a drug quantity reduction, and the government would not object. I would therefore review the issue for plain error. See United States v. Young, 223 F.3d 905, 909 (8th Cir. 2000) (reviewing issue raised by the government under plain error standard where "[t]he government not only failed to make this argument to the District Court, but actually made explicit representations from which we believe the court could only have concluded that the government conceded the issue."); United States v. Redlin, 983 F.2d 893, 896 (8th Cir. 1993) ("A party must raise a claim of error with the district court so the district court may correct itself and thus obviate the need for our review. It is simply unfair to reverse a trial court on the basis of an issue that it has not had the opportunity to consider.") (internal quotations and citations omitted).

Without the acceptance-of-responsibility reduction, the district court's drug-quantity calculation would have resulted in a final offense level of 26, calling for a Guidelines imprisonment range of 63-78 months, which is 34-43 months fewer than 97-121 months the Guidelines required absent the error. Applying our precedent to these circumstances, I cannot conclude the district court plainly erred.

In United States v. Filker, we held the fact a defendant received a sentence fifteen months lower than the sentence required by a proper application of the Guidelines did not "represent a miscarriage of justice" under the plain error standard of review. 972 F.2d 240, 242 (8th Cir. 1992). The Guidelines called for a total

10

offense level of 16 and a sentencing range of 33-41 months, but the district court without explanation used a total offense level of 10 and a sentencing range of 15-21 months, and imposed a sentence of eighteen months. Id. at 241. We upheld the sentence because the government failed to object. Id. at 242; see also United States v. Posters N Things Ltd, 969 F.2d 652, 663 (8th Cir. 1992) (finding no miscarriage of justice under plain-error standard where government failed to object to sentence of 108 months and statute required 120 months); United States v. Ragan, 952 F.2d 1049, 1049-1050 (8th Cir. 1992) (holding "a downward departure from the sentencing range, even if erroneous (a question we do not decide), did not result in a miscarriage of justice, and therefore was not plain error.").

Although cases from other circuits hold it is plain error to sentence a defendant to less time than required by a correct application of the Guidelines,[3] Filker, Posters N Things, and Ragan still appear to bind us in this circuit. Perhaps these three cases can be distinguished on the ground the erroneous reduction involved here is larger than the reductions in those cases in absolute terms. But I believe the proportion of the reduction offers a better basis for comparison. The reduction in Filker, for example, is proportionately larger than the reduction involved here. In Filker, the fifteen-month departure represented 45% of the 33-month minimum required by the Guidelines. Here, the difference between the low ends of the erroneous and correct

---

[3]See, e.g., United States v. Gordon, 291 F.3d 181, 194 (2d Cir. 2002) (finding plain error where district court imposed sentence of 97 months, and proper application of the Guidelines would have resulted in a sentencing range of at least 108-135 months and possibly 121-151 months); United States v. Clark, 274 F.3d 1325, 1328 (11th Cir. 2001) ("[D]istrict court plainly erred by imposing a 150-month sentence in light of the 240-month mandatory statutory minimum sentence"); United States v. Perkins, 108 F.3d 512, 517 (4th Cir. 1997) (correcting unwarranted 52-month reduction in Guidelines sentence under plain error standard); United States v. Barajas-Nunez, 91 F.3d 826, 833 (6th Cir. 1996) (finding plain error where district court imposed sentence of 8 months, and proper application of the Guidelines would have resulted in sentence of at least 57 months).

imprisonment ranges is just 35% of the 97-month minimum required by the Guidelines. Perhaps at some point an erroneous sentence can become so disproportionate we must conclude a gross miscarriage of justice has occurred, but I do not think this case has reached that point.

As the majority opinion notes, see ante at n.1 (citing United States v. Marsanico, 61 F.3d 666, 668 (8th Cir. 1995) (reversing under plain error standard when a defendant's sentence was erroneously lengthened by 21 months)), our past cases clearly distinguish between what constitutes a miscarriage of justice when a defendant's sentence is *longer* than it should be, and what constitutes a miscarriage of justice when a defendant's sentence is *shorter* than it should be. See also United States v. Comstock, 154 F.3d 845, 850 (8th Cir. 1998) (reversing under plain error standard when a defendant's sentence was erroneously lengthened by 17 months). I, like the majority, am troubled by the different standard we apply when the government's failure to raise an issue results in a shorter sentence. Absent action by the en banc court, however, I believe we are still bound by Filker, Posters N Things, and Ragan.

For these reasons, I respectfully dissent from the majority's decision to reverse the district court's drug-quantity calculation. I concur in all other aspects of the majority's opinion.

_____

12