# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2864

_____

United States of America,      *
     *
     Plaintiff - Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the
     *    Southern District of Iowa.
Chris L. Turner,      *
     *
     Defendant - Appellant.      *

_____

Submitted: February 8, 2010
Filed: May 10, 2010

_____

Before LOKEN, Chief Judge,[*] GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

After a bench trial, Chris L. Turner was convicted of conspiring to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841 and 846. Because of a prior felony drug conviction, this quantity finding subjected him to a mandatory minimum sentence of 120 months in prison. See § 841(b)(1)(B)(vii). The

_____

[*]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

district court[1] imposed the mandatory minimum sentence. Turner appeals, arguing the evidence was insufficient to support the quantity determination. We affirm.

The government's five witnesses and trial exhibits established the following facts, viewing the evidence, as we must, in the light most favorable to the verdict. In late October 2007, interdiction officers posted drug checkpoint warning signs just before a rest stop exit on Interstate 80 near Bettendorf, Iowa, and watched in the parking area for people who might be exiting to avoid the checkpoint. Turner pulled into the area, driving a pickup truck with Nevada license plates, and stared at the officers for a prolonged period. Two agents approached and told Turner they were looking for guns and drugs. Turner answered evasively, then consented to a search of the truck. When the agents noted a locked cover on the bed of the truck, Turner gave them a key and said, "It's in there." Agents found 104 pounds -- about 47 kilograms -- of high-grade marijuana. The search also yielded three cell phones, truck maintenance receipts, and a duffel bag containing $1,000.

After he was arrested and given Miranda warnings, Turner told interviewing agents that he was a disabled former construction worker who transported drugs to support his lifestyle; that he was traveling from Nevada to Vermont; that the 104 pounds of marijuana found in the truck were his; that he was being paid $20,000; and that he had made two prior trips and been paid $20,000 for each. Turner explained how he received drugs to be transported. He would go to a restaurant and leave his truck in the parking lot; while inside, an unknown person would take the vehicle, load it with drugs, and return it to the parking lot. He declined to disclose where these transactions had occurred. The agents did not ask Turner what type or quantity of drugs he transported on the two prior trips. An investigator testified that 104 pounds of marijuana had a wholesale value of about $520,000; that $20,000 would not be paid

---

[1]The HONORABLE JOHN A. JARVEY, United States District Judge for the Southern District of Iowa.

to transport a small quantity of drugs; and that it was unlikely a first-time drug "mule" would be entrusted with such a valuable load.

Records from one of Turner's cell phones recorded 1,689 contacts between March 1 and October 25, 2007, with a Nevada number that Turner's address book identified as belonging to "Bro." On October 23, he received a series of messages from Bro concerning a rendezvous with unknown individuals at an unnamed location. The series finished with a message saying "B SAFE I GAVE N EXTRA GRAND," which corresponded to the $1,000 found in Turner's truck. After this exchange, Turner received eight text messages from Bro before his arrest on the 25th saying "OK" or "Well." An investigator testified that it is common for those involved in drug trafficking to periodically send messages checking on the status of their couriers.

The government also presented evidence that North Las Vegas police stopped Turner for a traffic violation in August 2007, and a search of his Dodge Caravan uncovered $10,000 in a cell phone box, $8,000 in a plastic bag, and a bank record of a $1,000 deposit the previous day, plus a small amount of cocaine, five cell phones, and a two-way radio. A drug dog alerted on the money, and the money was seized as drug proceeds. Turner pleaded guilty to possession of cocaine. The government introduced maintenance records showing that the truck had been driven 6,185 miles from July 13, 2007 to September 22, 2007; 3,544 miles from September 25 to October 11; and 3,612 miles from October 20 to Turner's October 25 arrest.

Reviewing this evidence in detail, and emphasizing the seizure of 47 kilograms and Turner's admission that he made two other trips and was paid $20,000 for each of the three trips, the district court found beyond a reasonable doubt that Turner was guilty of conspiring to distribute more than 100 kilograms of marijuana. Turner argues on appeal that the evidence was insufficient to prove this drug quantity beyond a reasonable doubt.

At the outset, we note that counsel for both parties applied the wrong burden of proof to this issue in the district court and on appeal. At the start of the bench trial, defense counsel in opening statement conceded that Turner "is guilty of possession with intent to deliver" 47 kilograms of marijuana. Counsel continued:

> the reason we're doing a bench trial is that we believe the Court will have to make a finding, a finding beyond a reasonable doubt that this involved more than 100 kilograms . . . . I believe Apprendi [v. New Jersey, 530 U.S. 466 (2000),] applies in this case and that it has to be a beyond a reasonable doubt finding above 100 kilograms.

Unfortunately, the prosecutor did not object, and the trial proceeded on this basis, with the court ultimately making its quantity finding beyond a reasonable doubt. But defense counsel misstated controlling law of this circuit. Drug quantity under 21 U.S.C. § 841(b)(1) is not an element of the crime unless it increases the statutory *maximum* punishment. United States v. Webb, 545 F.3d 673, 678 (8th Cir. 2008), cert. denied, 129 S. Ct. 2013, 2021 (2009). The fact that the drug quantity charged in the indictment subjected Turner to a ten-year mandatory minimum sentence "does not make Apprendi applicable" to the drug quantity determination. United States v. Serrano-Lopez, 366 F.3d 628, 638 n.9 (8th Cir. 2004). For sentencing purposes, a jury's quantity determination "is practically irrelevant," id. at 638, because at sentencing the district court applies a preponderance-of-the-evidence standard and "may impose a sentence based on a drug quantity determination greater than that found by the jury so long as the sentence does not exceed the statutory maximum of the convicted offense." Webb, 545 F.3d at 677. The same principles apply after a bench trial. Therefore, while the district court must find beyond a reasonable doubt the statutory elements of a drug conspiracy offense, as set forth in 21 U.S.C. §§ 841(a) and 846, the court need only base its drug quantity determination on the preponderance of the evidence, whether that determination is made at trial or at sentencing. See United States v. Villareal-Amarillas, 562 F.3d 892, 897-98 (8th Cir. 2009).

Our review of a district court's drug quantity determination is for clear error, applying the preponderance-of-the-evidence standard, "even if the evidence of quantity were insufficient for purposes of a jury's quantity calculation." Serrano-Lopez, 366 F.3d at 638. Here, the district court included a drug quantity determination in its fact findings at the conclusion of the bench trial, and then applied that finding at sentencing. The same applicable principles dictate that our appellate review of that determination must be for clear error, applying the preponderance standard. (Our opinion in United States v. Rolon-Ramos, 502 F.3d 750 (8th Cir. 2007), in reversing a jury's drug quantity determination, left this issue unaddressed, doubtless because of the way the case was presented on appeal.)

After careful review of the trial record, we conclude that the district court's determination that Turner was part of a conspiracy involving more than 100 kilograms of marijuana must be affirmed, whether we apply the standard for reviewing sufficiency of the evidence after a bench trial, see United States v. Kain, 589 F.3d 945, 948 (8th Cir. 2009), or the clearly erroneous standard for reviewing drug quantity findings at sentencing. Turner was apprehended transporting 47 kilograms of high-grade marijuana across the country for a payment of $20,000. He confessed to making two prior trips for the same payment. The government introduced substantial evidence corroborating on-going drug trafficking earlier in 2007, and testimony that it was unlikely he would have been paid $20,000 for substantially smaller quantities. This evidence was more than sufficient for a reasonable judge or jury to find that Turner participated in a conspiracy to distribute more than 100 kilograms of marijuana.

The judgment of the district court is affirmed.

_____