# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2723

_____

United States of America,

          Appellee,

v.

Soyner Umanzor,

          Appellant.

 

_____

No. 09-2748

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

United States of America,

          Appellee,

v.

Odir Isreal Esquivel-Menendez,

          Appellant.

_____

Submitted: April 15, 2010
Filed: August 23, 2010

_____

Before LOKEN, BRIGHT, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Soyner Umanzor and Odir Esquivel-Menendez pleaded guilty to conspiring to distribute more than 500 grams of methamphetamine mixture or fifty grams of actual methamphetamine. The men also pleaded guilty to additional, related charges. Umanzor now appeals his conviction and sentence arguing there was no factual basis for his plea and he did not make his plea knowingly and voluntarily. Esquivel-Menendez appeals only his sentence, arguing the district court[1] committed procedural error in applying a two-level Guidelines enhancement for exercising a leadership role in the offense. We affirm.

I.     Background

Law enforcement officials conducted a series of controlled buys from Esquivel-Menendez between December 2007 and April 2008. Esquivel-Menendez spoke with a confidential informant to set up each transaction and personally conducted each transaction. Umanzor's participation was more limited. Umanzor drove Esquivel-Menendez to the sites of transactions or arrived separately at the transaction sites carrying the methamphetamine. Because the drug quantities at issue are material to Umanzor's arguments on appeal, we describe the controlled buys in detail.[2]

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

[2]The factual recitation concerning the controlled buys was obtained from the offense conduct section of the presentence investigative report. The presentence report indicates the information contained in the offense conduct section was obtained from the government's discovery file and the prosecutor's offense conduct statement. Neither party filed any objection to any of the facts outlined in that section of the presentence report.

On December 20, 2007, a confidential informant contacted Esquivel-Menendez and arranged to purchase methamphetamine. Esquivel-Menendez directed the confidential informant to meet him at a grocery store parking lot in Denison, Iowa. Umanzor drove Esquivel-Menendez to the site, which was within 1000 feet of a middle school. Esquivel-Menendez sold the confidential informant 52.66 grams of a methamphetamine mixture for $2000. A lab later determined the mixture was 13% pure and contained 6.85 grams of actual methamphetamine.

On January 4, 2008, the confidential informant arranged to meet Esquivel-Menendez at the same location. Before the sale, the informant told officers Esquivel-Menendez claimed to have four ounces of methamphetamine but would sell only two. At the meeting point, Esquivel-Menendez entered the confidential informant's car and instructed the informant to drive to a rural location. Umanzor arrived at the rural location separately and handed drugs to Esquivel-Menendez, who sold them to the informant for $2200. A lab later determined the drugs from this second transaction were 19% pure, weighed 53.31 grams, and contained 10.13 grams of actual methamphetamine.

Later in January, the confidential informant told Esquivel-Menendez he was dissatisfied with the quality of the drugs. Esquivel-Menendez told the informant pure methamphetamine would cost $1500 per ounce. A few days later Esquivel-Menendez asked the informant when he would be willing to buy more methamphetamine and offered to sell a half pound of methamphetamine for $8400. The men did not consummate either sale.

On January 24, Esquivel-Menendez contacted the confidential informant and made arrangements to sell two grams of methamphetamine. At Esquivel-Menendez's residence, the informant purchased approximately fifty grams of a mixture containing methamphetamine; Umanzor was not present. The residence was within 1000 feet of a school.

Later that same day, Esquivel-Menendez and the informant arranged to meet at a convenience store. At the store, Esquivel-Menendez arrived in a car with Umanzor and a third man. The informant and the other men left in one car and drove to a restaurant where Esquivel-Menendez sold the informant an additional 27.36 grams of a 21% purity mixture containing 5.75 grams of actual methamphetamine.

On February 20, 2008, the confidential informant arranged to purchase more methamphetamine from Esquivel-Menendez. The informant told Esquivel-Menendez that he wanted to get out of the drug business and made plans to introduce Esquivel-Menendez to an undercover agent. The informant and the agent met Esquivel-Menendez in a parking lot in front of Esquivel-Menendez's residence. After entering the informant's car, Esquivel-Menendez called Umanzor, who was in the residence, and told him to "grab the stuff from under the couch and bring it out." Umanzor brought out a baggie of methamphetamine that Esquivel-Menendez sold to the informant for $2200. The baggie contained 55.72 grams of a mixture of 17% purity that contained 9.74 grams of actual methamphetamine.

In March 2008, the agent attempted to set up additional buys, but the deals fell through. Then, in April 2008, the undercover agent conducted a buy of over 100 grams of methamphetamine mixture from Esquivel-Menendez. Umanzor was not present for the April 2008 controlled buy. Authorities attempted to arrest Esquivel-Menedez after the buy, but he fled the scene. Authorities eventually apprehended Esquivel-Menendez, who consented to a search of his residence. There, authorities found additional methamphetamine. Later, authorities arrested Umanzor based on his involvement in the controlled buys.

Authorities eventually charged both men, bringing five counts against Umanzor and twenty against Esquivel-Menendez. Relevant to his arguments on appeal, Esquivel-Menedez pleaded guilty to several drug-related counts, including a

conspiracy count. Citing Esquivel-Menendez's acts of directing Umanzor, the district court found Esquivel-Menendez was an "organizer, leader, manager, or supervisor" in the conspiracy. U.S.S.G. § 3B1.1(c). Based on this finding, the court applied a two-level role-in-the-offense enhancement.

Without a plea agreement and shortly before trial was to begin, Umanzor pleaded guilty to all five counts: conspiring to distribute and possess with intent to distribute 500 grams or more of a methamphetamine mixture or fifty grams or more of actual methamphetamine, near a protected location, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(viii), 846, and 860(a); two counts of distributing or aiding and abetting the distribution of fifty grams or more of a methamphetamine mixture or 5 grams or more of actual methamphetamine, near a protected location, 21 U.S.C. §§ 841(a), 841(b)(1)(B)(viii), 846, and 860(a); and two counts of distributing and aiding and abetting the distribution of fifty grams or more of a methamphetamine mixture or five grams or more of actual methamphetamine, 2 U.S.C. §§ 841(a), 841(b)(1)(B)(viii) and 18 U.S.C. § 2.

At his plea hearing, the court explained to Umanzor, in detail, the rights he was giving up by pleading guilty and what the government would have to show to prove him guilty of the offenses. Regarding Count (1), the following colloquy took place:

> The Court: First, between about December 2007 and April 22, 2008, in the Northern District of Iowa and elsewhere, you and others reached an agreement or came to an understanding to distribute and possess with intent to distribute 500 grams of methamphetamine mixture, to distribute and possess with intent to distribute powder cocaine. Is that right?
>
> Counsel: No.[3]

_____

[3]Defense Counsel's interjection appears to be in response to the court's misstatement regarding powder cocaine. As quoted above, the court subsequently corrected this misstatement, and in any event, Umanzor does not allege error based on

The Court: That's what it says in your Rule 11 letter. This isn't a – to distribute and possess with intent to distribute 500 grams or more of methamphetamine mixture within a thousand feet of two different schools. Do you understand that's the first thing the government would have to prove?

Defendant: Yes.

The Court: And the second thing the government would have to prove is that you voluntarily and intentionally joined in the conspiracy, that is, the agreement or understanding, either at the time it was first reached or at some later time while the conspiracy was still in effect. Do you understand that's the second thing the government would have to prove?

Defendant: Yes.

The Court: And thirdly, that when you joined in the conspiracy you knew that the purpose of the conspiracy was the distribution and possession with intent to dispute controlled substances, specifically methamphetamine. Do you understand that's the third thing the government would have to prove?

Defendant: Yes.

The Court: And the fourth thing the government would have to prove is that you were involved in the distribution of 500 grams or more of methamphetamine within a thousand feet of two schools. Do you understand that's the fourth thing the government would have to prove?

Defendant: Yes.

The court conducted similar discussions as to the other four counts, none of which are in dispute on appeal. The court then permitted the Assistant United States Attorney ("AUSA") to question Umanzor to establish a factual basis for the plea. In

---

this specific statement.

establishing a factual basis for plea, Umanzor responded affirmatively to several questions, admitting he was "involved in the distribution of methamphetamine with Odir Esquivel-Menendez from December 2007 through April 22, 2008," and "assisted . . . by delivering methamphetamine and driving Esquivel-Menendez to deliver methamphetamine."

The AUSA then questioned Umanzor as to each of the four transactions described above. Umanzor admitted his involvement and agreed that, as to each instance, he did not dispute that a state lab analyzed the drugs and determined the drugs were a mixture of fifty grams or more containing five grams or more of pure methamphetamine. The AUSA did not recite the actual quantities as determined by a lab, and there was no reference to the actual quantities determined by the lab at any point during the plea hearing. The questioning concluded with the following exchange:

> AUSA: Do you agree that in this conspiracy you assisted Esquivel-Menendez in the distribution of more than 500 grams of methamphetamine mixture which contained more than 50 grams of actual pure methamphetamine?
>
> Defendant: You're saying that I assisted; right?
>
> AUSA: Yes.
>
> Defendant: Yes.
>
> AUSA: I think that is a sufficient factual basis, Your Honor.
>
> Court: Thank you very much . . . . [Counsel] do you agree that there's a sufficient factual basis in the record to support a plea of guilty to each of Counts 1, 2, 4, 8, and 9?
>
> Counsel: I do, Your Honor. I do want to follow up with one additional question with Mr. Umanzor about the nature of his agreement –

Court: Sure.

. . .

Counsel: Okay. Mr. Umanzor, what I want to talk to you about briefly is the nature of your agreement with Mr. Menendez on each of the dates that [the AUSA has] already discussed with you; okay?

Defendant: Yes.

. . .

Counsel: Mr. Umanzor, you are not saying with regard to each date that [the AUSA] discussed with you that prior to each instance you and Mr. Menendez discussed what was about to happen; correct:

Defendant: Correct.

. . .

Counsel: Basically what you're saying with regard to the scope of your agreement is that on each instance, each date, that was relayed to you by [the AUSA] today that your agreement consisted of a situation where you inferred from all the circumstances that existed at the time that what was about to happen was, in fact, a drug deal that you were assisting in and that those circumstances led you to believe that you were assisting Mr. Menendez in an illegal drug transaction.

Defendant: That is correct.

Umanzor did not subsequently challenge his plea in the district court or move to withdraw his plea. At sentencing, for the purpose of determining relevant conduct and calculating a drug quantity attributable to Umanzor, the probation office added together the amounts described for Umanzor's four transactions discussed above, resulting in a total of 189.05 grams of a mixture containing 32.47 grams of actual methamphetamine—less than 500 grams of total methamphetamine mixture and less

-8-

than fifty grams of actual, pure methamphetamine. The probation office noted, however, that Umanzor had pleaded guilty to conspiring to distribute 500 grams of a methamphetamine mixture or fifty grams of actual methamphetamine. Based on this larger quantity from the plea, the probation office determined Umanzor was responsible for fifty grams of pure methamphetamine and calculated an advisory Guidelines range of 97–121 months' imprisonment. The probation office adjusted this range to 120–121 months' imprisonment based on the mandatory statutory minimum sentence of 120 months. 21 U.S.C. § 841(b)(1)(A)(viii) (offenses involving more than 500 grams of a methamphetamine mixture or more than fifty grams of actual methamphetamine).

Defense counsel argued at sentencing that the 32.47 grams of actual methamphetamine as determined by the lab should control for sentencing purposes. Defense counsel also argued, based on this amount, the relevant statutory minimum sentence was sixty months as per 21 U.S.C. § 841(b)(1)(B)(viii) (offenses involving more than fifty grams of a methamphetamine mixture or more than five grams of actual methamphetamine).

The district court rejected counsel's argument, noting Umanzor had specifically admitted to assisting Esquivel-Menendez in the distribution of at least fifty grams of actual methamphetamine or 500 grams of a methamphetamine mixture. Specifically, the district court quoted the exchange between Umanzor and the AUSA from the plea hearing,

> Do you agree that in this conspiracy you assisted Mr. Menendez in the distribution of more than 500 grams of methamphetamine mixture which contained more than 50 grams of actual pure methamphetamine?" Defendant, "You're saying that I assisted; right?" [AUSA], "Yes." The defendant, "Yes."

Referring to this language, the court at sentencing concluded, "If that isn't a factual basis for 500 grams or more of methamphetamine, I don't know what is."

The court noted the unique and prejudicial situation involving Umanzor's plea: Umanzor specifically admitted to a quantity of drugs greater than the amount actually sold during the controlled buys in which he participated. Further, he pleaded guilty to an offense involving a specific quantity of drugs greater than that supported by the laboratory results. Counsel indicated that, all along, it had been counsel's intention to have Umanzor plead guilty and then argue at sentencing that the specific quantity attributable to Umanzor was only that amount actually shown by the laboratory results. The court stated that if this had been counsel's intention, counsel should have advised Umanzor to plead guilty to conspiracy without designating a specific quantity. The court also noted that counsel may have provided ineffective assistance in permitting his client to plead to the specific amount alleged in this case on the mistaken belief that the quantity admission at the plea hearing would not set a floor for purposes of determining relevant conduct at sentencing. Ultimately, the court viewed itself as bound by Umanzor's quantity admission during the plea hearing.[4]

---

[4]The district court was surprised by counsel's arguments at sentencing because counsel had not filed a brief in advance of the sentencing hearing. The district court noted that the probation office had discussed the case with counsel who indicated he did not want to attempt to withdraw the plea. At the sentencing hearing, counsel suggested in passing that withdrawing the plea would be a means of addressing the issue of drug quantity, but counsel did not ask to withdraw the plea, filed no motion to do so, and stated that it was not his strategy to withdraw the plea. At one point, counsel appeared to concede that it was too late to withdraw the plea:

> The Court: Because they found a lower quantity than what you allowed your client to plead guilty to. That's why. And in the 15 years I've been a United States District Court judge, you're the first lawyer that has pled someone to a higher quantity than what probation found.
>
> Counsel: Which is why we had this discussions [sic] with [Probation].

During the sentencing hearing, the court, the AUSA, and counsel for Umanzor also discussed the issue of a conspirator's liability for a co-conspirator's actions as measured by the foreseeability of the co-conspirator's actions. The parties noted the fact that Esquivel-Menendez had actually sold fifty grams or more of pure methamphetamine—more than merely the 32.47 grams he sold with Umanzor's assistance. The parties discussed whether this fact provided a separate basis for finding Umanzor responsible for fifty grams or more of pure methamphetamine. The probation office recommended that the court not attribute Esquivel-Menendez's additional sales to Umanzor. The AUSA asserted, and the court agreed, that it was not necessary to resolve the issue of whether Esquivel-Menendez's actions were reasonably foreseeable to Umanzor because Umanzor's admission at the plea hearing conclusively established the quantity at issue for purposes of the statutory mandatory minimum sentence.

On appeal, counsel renews the quantity-based arguments, presenting them as challenges to the plea and arguing Umanzor did not make his plea knowingly and voluntarily. Esquivel-Menendez appeals only the district court's application of the role-in-the-offense enhancement.

---

I mean, I said there was [sic] two options we could do. We discussed withdrawing the plea, and I don't think I ever said no. I said we can try–

The Court: It's too late to withdraw the plea. (footnote continued)

Counsel: I understand that. But I'm saying my approach to this was not to withdraw the plea. My approach to this was to deal with it in terms of relevant conduct and what amount should be attributable to him based on what was actually involved.

## II. Discussion

### A. Esquivel-Menendez

The role-in-the-offense enhancement of U.S.S.G. § 3B1.1(c) is applicable when a district court finds a defendant served as an "organizer, leader, manager, or supervisor." Id. We interpret these terms broadly, and a defendant may qualify for the enhancement if he directs the actions of only one other participant. See United States v. Erhart, 415 F.3d 965, 973 (8th Cir. 2005) ("We construe the terms 'manager' or 'supervisor' broadly under U.S.S.G. § 3B1.1."); United States v. Brown, 311 F.3d 886, 890 (8th Cir. 2002) ("We will uphold this enhancement if the defendant controlled at least one other participant in the drug trafficking offense."). The district court's determination that Esquivel-Menendez was an organizer, leader, manager, or supervisor is a factual determination that we review only for clear error. United States v. Davis, 583 F.3d 1081, 1097 (8th Cir. 2009), cert. denied, 130 S. Ct. 1555 (2010). As described above, there is adequate support in the record for the sentencing determination that Esquivel-Menendez directed or controlled the actions of Umanzor. Umanzor delivered drugs to Esquivel-Menendez or drove him to the sites of drug transactions on repeated occasions. On at least one occasion, immediately before Umanzor brought drugs to the transaction site, an undercover agent personally witnessed Esquivel-Menendez call Umanzor and tell him to "grab the stuff from under the couch" and bring it to the transaction site. Given the evidence that Umanzor was following Esquivel-Menedez's instructions, the district court did not clearly err in applying the enhancement.

B. Umanzor

1. Involuntary and Unknowing Plea

Umanzor argues he did not make his plea knowingly and voluntarily because, although he admits he intended to plead guilty to conspiring to distribute methamphetamine, he understood neither the quantities involved nor the scope of the conspiracy. He claims he responded affirmatively to all questions regarding quantities at his plea hearing because he assumed the government was charging him in accordance with the quantities determined from the four controlled buys. Only after the plea hearing, when he received a copy of the presentence investigation report listing the quantities as determined by a laboratory, did he learn that the quantities involved in the four transactions did not total fifty grams of pure methamphetamine or 500 grams of mixture.

As explained below, Umanzor's arguments are not entirely without merit. Umanzor, however, did not move to withdraw his plea in the district court. As such, he cannot challenge the voluntariness of his plea for the first time in his direct appeal. See United States v. Villareal-Amarillas, 454 F.3d 925, 932 (8th Cir. 2006) ("Because [the defendant] failed to attempt to withdraw his guilty plea in the district court, his claims are not cognizable in this appeal."); United States v. Murphy, 899 F.2d 714, 716 (8th Cir. 1990) (same).

Given the record and the procedural posture of the present case, any claim that Umanzor's plea is constitutionally flawed will need to be addressed through 28 U.S.C. § 2255 proceedings. One possible interpretation of Umanzor's plea and admission are that Umanzor knowingly and accurately admitted to assisting in the sale of 500 grams or more of a methamphetamine mixture, intended to admit to this full amount regardless of the amounts shown by the lab, and only changed his mind at a later time. Another possible interpretation is that Umanzor's overall knowledge of the scope of

the conspiracy was quite limited, he only knew of the transactions in which he personally was involved, and he only intended to admit to his conduct in the controlled buys as proven by the lab results.

In the latter case, his "admission" to involvement with 500 grams of methamphetamine mixture could have been merely the product of an incorrect assumption that the drug quantities from the four controlled buys added up to 500 grams of a mixture containing methamphetamine or fifty grams of actual methamphetamine. If this interpretation is correct, the portion of Umanzor's plea setting forth a quantity is supported only by an inaccurate admission. This is troubling because neither interpretation is unreasonable in light of the current record. Further, at the quantities involved, we cannot say as a matter of law that a person handling the drugs necessarily would know whether the total weight from the four transactions exceeded 500 grams or if the actual methamphetamine was greater than fifty grams.

Resolution of these competing interpretations would appear to be wholly contingent upon findings as to whether, at the time of his plea, Umanzor knew, or did not know, that the drugs from the four transactions were insufficient to prove him guilty of the quantities charged. The answer to this question, in turn is dependent upon Umanzor's communications with counsel and the question of whether counsel was ineffective. These outstanding questions illustrate why we cannot address Umanzor's plea challenge in this direct appeal. Absent findings as to counsel's performance and Umanzor's knowledge, it would require rank speculation for us to read Umanzor's admission as anything other than a clear and straightforward admission that he assisted in the sale of over 500 grams of a methamphetamine mixture.

2. Insufficient Evidence of Quantity

Umanzor argues in the alternative that even if his plea is not otherwise constitutionally infirm, there is insufficient evidence of drug quantity to support his ten-year minimum sentence. Having determined that Umanzor's plea is binding for the purpose of the present appeal, this issue reduces to the question of whether the court at sentencing was precluded from finding a quantity less than the amount the government charged in the indictment and Umanzor admitted in his plea. Because we conclude the court was constrained in this manner, Umanzor's factual challenge is not separable from his challenge to the plea.

We have repeatedly held that drug quantity is not an element of the offense unless the quantity raises the applicable statutory maximum sentence. See United States v. Turner, 603 F.3d 468, 471 (8th Cir. 2010) ("Drug quantity under 21 U.S.C. § 841(b)(1) is not an element of the crime unless it increases the statutory *maximum* punishment."); United States v. Webb, 545 F.3d 673, 677 (8th Cir. 2008), cert. denied, 129 S. Ct. 2021 (2009) ("[I]f the government wishes to seek a sentence that exceeds the statutory sentencing range for an indeterminate amount of drugs, 'then [it] must charge the facts giving rise to the increased sentence in the indictment and must prove those facts to the jury beyond a reasonable doubt.'"(quoting United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000))). Such holdings have arisen from situations where a defendant pleaded guilty to, or was found guilty of, a drug offense involving a specific quantity of drugs, and where the sentencing court subsequently determined the defendant's relevant conduct for sentencing purposes involved a larger quantity. See, e.g., United States v. Cole, 537 F.3d 923, 929 (8th Cir.), cert. denied, 129 S. Ct. 751 (2008).

As a matter of logic based upon the inter-relationship between the burdens of proof at sentencing and during the guilt phase, there is no inconsistency in finding a defendant guilty beyond a reasonable doubt as to one quantity and also, by a

preponderance of the evidence at sentencing, responsible for an even larger quantity. See id. (finding a defendant responsible for 150 grams of crack cocaine at sentencing after a jury determined beyond a reasonable doubt that the defendant possessed with intent to distribute five grams). As a practical matter, then, our holdings establish that an admission or finding beyond a reasonable doubt that a defendant was involved with *at least* a given quantity does not create a "ceiling" that limits a sentencing court's ability to later find a defendant responsible for a greater quantity.

Here, the relevant quantity is 500 grams of a mixture containing methamphetamine or fifty grams of actual methamphetamine. This amount is the threshold for an increase in the applicable statutory maximum (from forty years maximum, 21 U.S.C. § 841(b)(1)(B)(viii), to a maximum of life imprisonment, 21 U.S.C. § 841 (b)(1)(A)(viii)). Because crossing this threshold exposes a defendant to a larger statutory maximum, the quantity is an element of the offense necessary for the conviction. See Turner, 603 F.3d at 471; Webb, 545 F.3d at 677. Here, the government charged this amount in the indictment, the district court described the quantity as an element of the offense, and the district court explained that the plea would expose Umanzor to potential life imprisonment. Given these facts, the quantity as alleged in the indictment and admitted at the plea hearing is established by the conviction and necessarily serves as a "floor" for sentencing purposes. United States v. Campos, 362 F.3d 1013, 1015–16 (8th Cir. 2004) ("Once the jury found beyond a reasonable doubt that the amount of methamphetamine [the defendant] intended to distribute was 50 or more grams, it was a legal impossibility for the district court to find by a preponderance of the evidence that the amount [the defendant] intended to distribute was less than 50 grams."); see also United States v. Morin, 141 F. App'x 500, 501 (8th Cir. 2005) (unpublished per curiam).

Umanzor cites no authority, and we have identified none, holding a sentencing court may find a lesser quantity than the amount determined in the guilt phase through a plea, guilt-phase admission, or jury determination. We have stated, in another

-16-

context, that findings such as jury determinations of quantity (or other jury determinations regarding sentencing factors) may be "practically irrelevant," United States v. Serrano-Lopez, 366 F.3d 628, 638 (8th Cir. 2004), for sentencing purposes and may be treated as "mere surplusage," United States v. Washburn, 444 F.3d 1007, 1014 (8th Cir. 2006). We have only stated this, however, where the finding was not germane to an element of the offense and where a defendant argued that a guilt phase determination should serve as a ceiling to constrain sentencing determinations. See Washburn, 444 F.3d at 1014 (labeling a jury determination of a loss amount in a money laundering and wire-fraud case "mere surplusage" but also noting that the jury's finding was entirely consistent with the sentencing court's determination, by a preponderance of the evidence, that the defendant had caused a greater loss).

Umanzor's position differs slightly in that he argues such findings or admissions cannot serve as floor, i.e., that a sentencing court is free to ignore such findings and conclude a defendant is actually responsible for a lesser amount. We cannot accept Umanzor's argument in light of the principle set forth in Campos because "[i]t is axiomatic that a fact proved beyond a reasonable doubt cannot simultaneously be disproved by a preponderance of the evidence." Campos, 362 F.3d at 1016. See also United States v. Bertling, Nos. 09-1027 & 09-1028, 2010 WL 2733181, at *3–4 (8th Cir. July 13, 2010). Because quantity was established in this case both by the fact of the conviction as a threshold element of the offense and by Umanzor's express factual admission, the drug quantity was neither "virtually irrelevant" nor "mere surplusage," and we must reject Umanzor's argument.

We emphasize that we are not dealing with a guilt-phase quantity determination that is unnecessary to the conviction and that might be deemed mere "surplusage." The question before us is not merely whether a factual admission in a plea hearing (standing alone, unnecessary for, and apart from the fact of the conviction) is binding on a sentencing court or whether it is subject to interpretation at sentencing. Here, the plea is binding unless disturbed through collateral proceedings, and the quantity

amount inherent in Umanzor's plea serves as a floor for any sentencing-related quantity determinations.

We also emphasize that a fair reading of the plea hearing in this case leaves serious doubt as to the accuracy of the factual admission Umanzor provided in support of his plea. The physical evidence does not prove the quantity as set forth in the admission, and the court did not reach the question of whether Umanzor should be held responsible for Esquivel-Menendez's additional sales as being reasonably foreseeable. See United States v. Williams, 605 F.3d 556, 569 (8th Cir. 2010) ("A quantity of drugs from sales that are foreseeable to the defendant, although he did not actively participate in the actual sale, may be attributed to the defendant."). We simply are not in a position to address these issues in a direct appeal.

We affirm the judgment of the district court.

Judge Loken joins in part II.A. and concurs in the result as to appellant Soyner Umanzor.

BRIGHT, Circuit Judge, concurring.

I write separately to emphasize that Umanzor's ten-year, mandatory minimum prison sentence may be the result of a mistake. This court's opinion and the district judge's comments refer to possible relief under 28 U.S.C. § 2255. I too endorse that post-conviction approach for correction of the prison sentence, if it is wrong under the facts and the law.

_____