# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3138

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| DeShawn LaMont Hull, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 18, 2011
Filed: July 21, 2011

———————

Before SMITH, BRIGHT, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

DeShawn LaMont Hull pled guilty to distribution of cocaine base within 1000 feet of a protected location after a prior conviction for a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, and 860 (Count I), and to being a felon and domestic abuser in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), and 924(a)(2) (Count II). The district court[1] imposed concurrent sentences of 286 months imprisonment on Count I and 120 months imprisonment on Count II. Hull appeals both sentences, and we affirm.

———————

[1] The Honorable Linda R. Reade, Chief Judge, United States District Judge for the Northern District of Iowa.

## I.

Hull was convicted in Iowa state court for selling crack cocaine to a confidential informant (CI) and received a 10 year suspended prison sentence and three years of probation. During a home visit and search of Hull's home by Hull's probation officers, the officers discovered a revolver with an obliterated serial number in Hull's bedroom closet. The officers also found a scale with cocaine residue in a different padlocked room of the house. Hull and his wife both denied having any knowledge of the gun.

In the ensuing investigation into the revolver, the police questioned Hull's wife. She confessed that she had lied to Hull's probation officers about the weapon and confirmed that the revolver belonged to Hull. When Hull's wife was subpoenaed to testify before a federal grand jury, however, she followed instructions from Hull and again lied about the origin and ownership of the gun.

During this same time period, Hull had multiple run-ins with the police about his ongoing drug dealing activities. Officers observed Hull engage in a suspected drug transaction, and their search of Hull uncovered a large amount of cash despite Hull being unemployed. In another instance, after Hull was arrested for operating a vehicle without a valid driver's license and placed in the back of the squad car, the officers overheard Hull speaking on his cellular phone about drugs hidden in an egg. The officers later recovered the egg from another passenger and found drugs inside of it. Finally, the Cedar Rapids Police Department arranged for a CI to make a controlled buy from Hull. Hull's wife drove Hull and the CI to Hull's home where Hull retrieved crack cocaine and sold it to the CI. The sale occurred within 1000 feet of McKinley Middle School.

Hull was indicted in Count I for distributing cocaine base within 1000 feet of a protected location after a prior conviction for a felony drug offense and in Count II for being a felon and domestic abuser in possession of a firearm. Hull pled guilty to both counts.

At sentencing, the district court calculated a base offense level of 31 for Count I based on a finding that over 50 grams of cocaine base was attributable to Hull. See United States Sentencing Commission, Guidelines Manual, §2D1.1(c)(5), §2D1.2(a). The district court increased the offense level by two based on a finding that Hull possessed a firearm in connection with his drug distribution, see U.S.S.G. §2D1.1(b)(1), and by another two levels based on a finding that Hull was an organizer, leader, manager, or supervisor of the drug-trafficking activity, see U.S.S.G. §3B1.1(c). The district court's calculations resulted in an adjusted offense level of 35 for Count I.

For Count II, the parties stipulated that Hull's base offense level was 20 because Hull had committed the gun offense after having been convicted of a felony drug offense. See U.S.S.G. §2K2.1(a)(4)(A). The parties also agreed to a four-level enhancement because the revolver had an obliterated serial number. See U.S.S.G. §2K2.1(b)(4)(B). The district court increased the offense level by four more levels after finding that Hull had used or possessed the firearm in connection with the drug trafficking offense. See U.S.S.G. §2K2.1(b)(6). The parties agreed to an additional two-point enhancement for obstruction of justice. See U.S.S.G. §3C1.1. These calculations yielded an adjusted offense level of 30, but because the counts were grouped together under §3D1.2(a), the higher offense level from Count I established the offense level for the group, see U.S.S.G. §3D1.3(a), making Count II's adjusted offense level 35. The district court denied Hull's request for an acceptance of responsibility reduction. See U.S.S.G. §3E1.1. With an offense level of 35 and a criminal history category V, Hull's Guidelines range for both Counts I and II was 262 to 327 months imprisonment. See U.S.S.G. §5G1.2(c). Count II, however, was

subject to a statutory maximum sentence of 120 months imprisonment, see 18 U.S.C. § 924(a)(2), making the Guidelines range for Count II 120 months, see U.S.S.G. §5G1.1(a). The district court sentenced Hull to concurrent sentences of 287 months imprisonment on Count I and 120 months imprisonment on Count II. Hull appeals, arguing both procedural error and substantive unreasonableness.

II.

We review a district court's sentence first for procedural error and then for substantive reasonableness. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "We first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." United States v. Buesing, 615 F.3d 971, 974-75 (8th Cir. 2010) (internal quotation omitted).

First, Hull challenges the district court's decision to impose a two-level enhancement with respect to Count I for possession of a firearm based on its finding that Hull possessed the revolver found in his house in connection with his drug-trafficking offense. See U.S.S.G. §2D1.1(b)(1). We review the district court's factual findings for clear error. United States v. Brewer, 624 F.3d 900, 907 (8th Cir. 2010), cert. denied, 131 S. Ct. 1805 (2011).

To carry its burden of proving that the firearm enhancement should apply under section 2D1.1, "[t]he government must simply show that it is not clearly improbable that the weapon was connected to the drug offense." United States v. Peroceski, 520 F.3d 886, 889 (8th Cir. 2008); see also U.S.S.G. §2D1.1, cmt. (n.3). The unobjected to portions of the Presentence Investigation Report (PSR) show that Hull kept the gun in the same house where he stored and dealt his drugs. At sentencing, a Cedar Rapids

Police Officer and Eugene Davis, a man who had purchased drugs from Hull, testified that firearms were tools of the drug trade in Cedar Rapids. Davis also testified to seeing Hull in possession of a firearm while selling drugs. The district court's finding that the gun was connected to Hull's drug-trafficking activities was supported by ample evidence and was not clearly erroneous.

Second, Hull challenges the district court's decision to impose a two-level enhancement with respect to Count I based on Hull's role in the drug trafficking activity. See U.S.S.G. §3B1.1(c). The district court's conclusion that Hull was an organizer, leader, manager, or supervisor is a factual determination that we review only for clear error. United States v. Umanzor, 617 F.3d 1053, 1060 (8th Cir. 2010).

To justify an enhancement under section 3B1.1(c), the district court must find that the defendant "managed or supervised at least one other participant in the criminal conspiracy." United States v. Bewig, 354 F.3d 731, 738 (8th Cir. 2003). "[T]he enhancement may apply even if the management activity was limited to a single transaction." United States v. Garrison, 168 F.3d 1089, 1096 (8th Cir. 1999). The unobjected to portions of the PSR show that Hull's wife chauffeured him during the drug sale to the CI. Further, at sentencing, Davis testified that Hull had directed Davis to buy cocaine from Hull's wife when Hull was in jail and that Hull often used his wife to drive the car on drug deals. In light of this evidence, the district court did not clearly err in concluding that Hull was an organizer, leader, manager, or supervisor in the drug-trafficking activity.

Third, Hull argues the district court erred in attributing more than 50 grams of cocaine base to him, which led to a base offense level of 31 as to Count I. Drug quantity findings are factual findings that we review for clear error. United States v. Johnson, 619 F.3d 910, 921 (8th Cir. 2010).

At the sentencing hearing, Davis testified that from 2003 to 2009, he bought between one and four "8-balls" of crack cocaine three times per week, except for when Hull was incarcerated. Based on Davis's testimony, the probation office calculated that Hull sold approximately .125 grams of crack cocaine to Davis three times per week for 157.5 weeks, which translated into approximately 59 grams of cocaine base. Hull responds that Davis's testimony should not be credited because Davis testified in exchange for a possible sentence reduction. The district court, however, credited Davis's testimony and this determination is "virtually unassailable on appeal." United States v. Freeman, 625 F.3d 1049, 1052 (8th Cir. 2010) (quotation omitted). Hull does not contest the probation office's calculation of quantity based on Davis's testimony. The district court did not clearly err in attributing more than 50 grams of cocaine base to Hull.

Fourth, Hull argues that the district court erred in denying him an offense level reduction for acceptance of responsibility on Count II. We review this issue for clear error, giving great deference to the district court. United States v. Jones, 612 F.3d 1040, 1047 (8th Cir. 2010).

A sentencing court should decrease an offense level by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. §3E1.1. An enhancement for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. §3E1.1, cmt. (n.4); see also United States v. Waldner, 580 F.3d 699, 708 (8th Cir. 2009). Although Hull eventually pled guilty to the firearm charges, he initially made false statements to the police about the gun and instructed his wife to lie to the grand jury about the origin and ownership of the gun. Moreover, even after his guilty plea, Hull continued to deny a connection between the gun and the drugs despite unobjected to statements in the PSR and testimony at the sentencing hearing establishing such a connection. In light of these facts, this is not one of those extraordinary circumstances in which both an offense level increase for obstruction

of justice and a decrease for acceptance of responsibility applies. The district court did not clearly err in denying Hull's request for an acceptance of responsibility reduction.[2]

Finally, Hull challenges the substantive reasonableness of the sentence imposed under section 3553(a). "We review the reasonableness of a sentence under a deferential abuse-of-discretion standard, and we accord a presumption of reasonableness to a sentence within the advisory guideline range." United States v. Vinton, 631 F.3d 476, 487 (8th Cir. 2011) (internal citations omitted). A sentencing court abuses its discretion when it "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Moore, 565 F.3d 435, 438 (8th Cir. 2009) (quoting United States v. Kowal, 527 F.3d 741, 749 (8th Cir. 2008)).

The district court properly considered all of the section 3553(a) factors before imposing the sentence. In particular, the district court emphasized that Hull's offense was particularly egregious because Hull had sold a large quantity of crack cocaine over a lengthy period of time, he continued to sell drugs throughout his prior periods of incarceration, he had dealt drugs while armed with a firearm with an obliterated serial number, and he had persuaded his wife to lie to the grand jury. The district court also found that Hull was likely to reoffend based on his extraordinarily lengthy

---

[2] Hull also argues that the district court made an error in calculating the adjusted offense level for Count II. Hull does not object, however, to the district court's determination that Count I's offense level established the offense level for both Counts I and II. See U.S.S.G. §3D1.3(a). Thus, any error in calculating the offense level for Count II is irrelevant because the higher offense level from Count I would still control.

criminal history and his escalating behavior. We conclude that the sentences imposed were not substantively unreasonable.

## III.

Accordingly, Hull's sentence is affirmed.

_____